IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR. NO. 05-00486 HG-KSC |
| Plaintiff, ) | **ORDER DENYING DEFENDANT NOSHIR S. GOWADIA'S MOTION TO SUPPRESS EVIDENCE OBTAINED OR DERIVED FROM FISA SEARCH** |
| vs. ) | |
| NOSHIR S. GOWADIA, ) | |
| Defendant. ) | |

**ORDER DENYING DEFENDANT NOSHIR S. GOWADIA'S MOTION TO SUPPRESS EVIDENCE OBTAINED OR DERIVED FROM FISA SEARCH**

Defendant Noshir S. Gowadia boarded a flight from Singapore to the United States on April 29, 2004. Upon his return to the United States, law enforcement agents conducted a search pursuant to the Foreign Intelligence Surveillance Act on Defendant's carry-on luggage, which included his laptop computer and other electronic media. Law enforcement agents created a mirrored hard drive of Defendant's laptop computer for subsequent analysis. The other contents of Defendant's carry-on luggage, which included hand-written notes, articles, and brochures regarding missile technology, were also examined.

Defendant now moves to suppress all evidence derived from that search. Defendant alleges that the evidence obtained by the Government was unlawfully acquired, the physical search was

1

not made in conformity with an order of authorization or approval, and the search may have violated Defendant's Fourth and Fifth Amendment Rights under the United States Constitution.

Defendant Noshir S. Gowadia's Motion to Suppress Evidence Obtained or Derived from FISA Search (Doc. 217) is **DENIED**.

## PROCEDURAL HISTORY

On November 8, 2005, an Indictment was filed against Defendant Noshir S. Gowadia ("Defendant" or "Gowadia"). (Doc. 11, "Indictment".)

On November 8, 2006, a Superceding Indictment was filed against Defendant. (Doc. 92, "Superceding Indictment".)

On October 25, 2007, a Second Superceding Indictment was filed against Defendant. (Doc. 133, "Second Superceding Indictment".)

On November 13, 2008, Defendant filed a Motion to Suppress Evidence Obtained or Derived from FISA Search. (Doc. 217, "Motion".)

On December 16, 2008, the Government filed an Unclassified Ex Parte Opposition to Defendant's Motion for Suppression of Evidence Obtained and Derived from FISA Search. (Doc. 245, "Opposition".) The Opposition contains a "Declaration and Claim of Privilege of the Attorney General of the United

States" executed by Michael B. Mukasey, dated December 16, 2008.

On the same day, the Government also filed under seal a Classified Ex Parte Opposition to Defendant's Motion for Suppression of Evidence Obtained and Derived from FISA Search. (Doc. 247, "Classified Ex Parte Opposition".) In conjunction with the Classified Ex Parte Opposition, the Government also filed the following exhibits under seal: the application papers submitted by the Government to the Foreign Intelligence Surveillance Court, the accompanying declarations to the Government's application, the certification from a high-ranking Executive Branch official, the search warrant issued by the Foreign Intelligence Surveillance Court, and the return on the search warrant. (Doc. 246, "Sealed Exhibits".)

On December 22, 2008, Defendant filed a Reply to Government's Unclassified Ex Parte Memorandum in Opposition to Defendant's Motion for Suppression of Evidence Derived from FISA Search and Motion for Disclosure of FISA Applications and Orders and for Adversary Hearing on Motion to Suppress. (Doc. 250, "Reply".)

The hearing on the Motion was held on January 6, 2009.

## ANALYSIS

**I.   Applicable Law**

    **A.   The Foreign Intelligence Surveillance Act**

The Foreign Intelligence Surveillance Act ("FISA") establishes a statutory procedure whereby the Executive Branch may collect foreign intelligence information within the United States after meeting certain requirements. <u>United States v. Johnson</u>, 952 F.2d 565, 571 (1st Cir. 1992); 50 U.S.C. §§ 1801-1811 (electronic surveillance); 50 U.S.C. §§ 1821-1829 (physical search).

FISA permits the Government to apply for authorization to conduct a physical search. Before an application is submitted to the Foreign Intelligence Surveillance Court for consideration, FISA requires a review of the application by the Attorney General[1] and a high-ranking Executive Branch official with national security responsibilities. 50 U.S.C. § 1823(a) & (a)(7) (2000). The high-ranking Executive Branch official must sign a certification that states the following information:

    (1)   the official deems the information sought to be foreign intelligence information;

    (2)   a significant purpose of the surveillance is to obtain

---

[1]   FISA defines "Attorney General" to also include the Acting Attorney General, the Deputy Attorney General, and the Assistant Attorney General for National Security. 50 U.S.C. §§ 1801(g), 1821(1).

4

       foreign intelligence information;

(3) such information cannot be reasonably obtained by normal investigative techniques;

(4) designates the type of foreign intelligence information being sought according to the categories described in 50 U.S.C. § 1801(e); and

(5) includes a statement explaining the basis for the certifications required by paragraphs (3) and (4) above. 50 U.S.C. § 1823(a)(7) (2000).

Upon obtaining the necessary certification, the Government may then submit the application to conduct the physical search to the Foreign Intelligence Surveillance Court. The application must contain, among other things, the following information:

(1) the description or identity of the target of the search, along with a detailed description of the premises or property to be searched and the information, material, or property to be seized, reproduced, or altered;

(2) a statement of the facts and circumstances relied upon by the applicant to justify the applicant's belief that: (a) the target of the physical search is a foreign power or an agent of a foreign power, (b) the property to be searched contains foreign intelligence

       information, and (c) the property to be searched is owned, used, possessed by, or is in transit to or from a foreign power or an agent of a foreign power;

(3) a statement of the proposed minimization procedures;

(4) a statement of the nature of the foreign intelligence sought and the manner in which the physical search is to be conducted; and

(5) the certification. 50 U.S.C. § 1823(a)(1)-(9) (2000).

In order to approve the Government's application for the physical search, the Foreign Intelligence Surveillance Court must find that:

(1) the President has authorized the Attorney General to approve the FISA application;

(2) the application has been made by a "Federal officer" and has been approved by the Attorney General;

(3) there is probable cause to believe that: (a) the target of the physical search is a foreign power or an agent of a foreign power[2], and (b) the premises or property to be searched is owned, used, possessed by, or in transit to or from a foreign power or an agent of a foreign power;

---

[2] The statute goes on to state that "no United States person may be considered an agent of a foreign power solely upon the basis of activities protected by the first amendment to the Constitution of the United States." 50 U.S.C. § 1824(a)(3)(A) (2000).

    (4)   the proposed minimization procedures meet the definition of minimization contained in the FISA; and

    (5)   the application contains all of the statements and certifications[3] required by 50 U.S.C. § 1823 (2000). 50 U.S.C. § 1824(a)(1)-(5) (2000).

If the FISA application has met the relevant statutory provisions and made the necessary findings, the Foreign Intelligence Surveillance Court is required to issue an ex parte order authorizing the search. 50 U.S.C. § 1824(a). The ex parte order must specify:

    (1)   the identity (or a description of) the specific target of the physical search;

    (2)   the nature and location of each of the premises or property to be searched;

    (3)   the type of information, material or property to be seized, altered or reproduced through the physical search;

    (4)   a statement of the manner in which the physical search will be conducted;

    (5)   the authorized scope of the physical search;

    (6)   the applicable minimization procedures; and

---

[3] If the target of the search is a United States person, the Foreign Intelligence Surveillance Court must also find that the certifications accompanying the Government's application are not clearly erroneous. 50 U.S.C. § 1824(a)(5) (2000); see also United States v. Pelton, 835 F.2d 1067, 1075 (4th Cir. 1987).

 (7) the period of time during which the physical search is approved. 50 U.S.C. § 1824(c)(1)(A)-(E) (2000).

### B. Emergency Search Authorization by the Attorney General

An emergency search may be executed under the FISA, prior to the issuance of an ex parte order by the Foreign Intelligence Surveillance Court, with authorization from the Attorney General. 50 U.S.C. § 1824(e) (2000 & Supp. 2004). The Attorney General may only authorize an emergency search if the following four conditions have been met:

 (1) the Attorney General reasonably determines that an emergency situation exists with respect to the execution of a physical search to obtain foreign intelligence information before an order authorizing such physical search can be obtained;

 (2) he reasonably determines that the factual basis for issuance of an order under the FISA statute exists;

 (3) he informs the Foreign Intelligence Surveillance Court at the time of the authorization that the decision has been made to execute an emergency physical search; and

 (4) he makes an application in accordance with the FISA statute to the Foreign Intelligence Surveillance Court as soon as practicable, but not more than 72 hours after the physical search was authorized. 50 U.S.C. §§

1824(e)(1)(A)-(B) (2000 & Supp. 2004).

### C. Use of FISA Evidence in Criminal Prosecutions

FISA allows the use of information obtained or derived from any physical search authorized by the Foreign Intelligence Surveillance Court in a criminal prosecution as long as the use comports with the FISA's statutory requirements. The use of information obtained and derived pursuant to the FISA is permitted in proceedings before a federal court, provided that proper notice is given to the court and to each "aggrieved person"[4] against whom the information is to be used. 50 U.S.C. § 1825(d). If the defendant in a criminal case is an "aggrieved person," he may then move to suppress the use of FISA information on two grounds: (1) that the information was unlawfully acquired; or (2) the physical search was not made in conformity with an order of authorization or approval. 50 U.S.C. § 1825(f).

### D. District Court Standard of Review

In order to grant an application to conduct a search pursuant to the FISA, the Foreign Intelligence Surveillance Court is required to review the Government's application papers and make

---

[4] An "aggrieved person" is a "person whose premises, property, information, or material is the target of physical search or any other person whose premises, property, information, or material was subject to physical search." 50 U.S.C. § 1821(2).

several findings pursuant to 50 U.S.C. § 1824(a)(1)-(5) (2000). When reviewing an order authorizing a search pursuant to the FISA, the district court should undertake the same analysis that was used by the Foreign Intelligence Surveillance Court in authorizing the search. The district court should apply a <u>de novo</u> standard of review. <u>United States v. Rosen</u>, 447 F.Supp.2d 538, 545 (E.D.Va. 2006) ("This review is properly de novo, especially given that the review is ex parte and thus unaided by the adversarial process.").[5]

When reviewing the certifications contained in a FISA application, the district court should also apply the same standard as the Foreign Intelligence Surveillance Court. <u>United States v. Badia</u>, 827 F.2d 1458, 1463 (11th Cir. 1987) ("Congress intended the reviewing court to have no greater authority to review the executive branch's certifications than has the FISA judge."). In this situation, the Foreign Intelligence Surveillance Court was required to find that the accompanying certifications were not "clearly erroneous," because the target of the search was a "United States person." 50 U.S.C. § 1824(a)(5) (2000); <u>United States v. Pelton</u>, 835 F.2d 1067, 1075 (4th Cir. 1987). The district court should, therefore, apply the same "clearly erroneous" standard when reviewing the accompanying certifications. <u>Badia</u>, 827 F.2d at 1463.

---

[5] The Fourth Circuit Court of Appeals in <u>Pelton</u>, however, previously held that where a "statutory application was properly made and earlier approved by a FISA judge, it carries a strong presumption of veracity and regularity in a reviewing court." <u>Pelton</u>, 835 F.2d at 1076 (citing <u>Duggan</u>, 743 F.2d at 77).

The Second Circuit Court of Appeals has stated that certifications submitted in support of a FISA application should be "presumed valid." United States v. Duggan, 743 F.2d 59, 77 n.6 (2d Cir. 1984) (citing Franks v. Delaware, 438 U.S. 154, 171 (1978)); see also Badia, 827 F.2d at 1463 ("Once the certification is made, it is subjected only to minimal scrutiny by the courts."). Neither the Foreign Intelligence Surveillance Court nor the reviewing district court should "second-guess the executive branch official's certification that the objective of the surveillance is foreign intelligence information." Duggan, 743 F.2d at 77; see also Badia, 827 F.2d at 1463.

**II.  The FISA Search Conducted on April 29, 2004**

Law enforcement agents conducted an emergency FISA search of Defendant Gowadia's carry-on luggage on April 29, 2004, as Defendant was returning to the United States from Singapore. Defendant now moves to suppress all evidence derived from that search.

    **A.  Government's Application to the Foreign Intelligence Surveillance Court**

Pursuant to 50 U.S.C. § 1824(a)(1)-(5) (2000), the Foreign Intelligence Surveillance Court is required to review the Government's application papers and make several findings before it can authorize a search under the FISA. In response to Defendant's Motion to Suppress, the Court undertakes the exact same analysis

that was used by the Foreign Intelligence Surveillance Court. The Court employs a de novo standard of review. Rosen, 447 F.Supp.2d at 545.

This Court has reviewed in camera the Government's Classified Ex Parte Opposition and the Sealed Exhibits. Upon review of these documents, the Court finds that the President authorized the Attorney General to approve the Government's FISA application for a physical search for foreign intelligence purposes. 50 U.S.C. § 1824(a)(1) (2000). In addition, the Court finds that the Government's FISA application was made by a Federal officer and was approved by the Attorney General. 50 U.S.C. § 1824(a)(2) (2000).

In addition to these two findings, the Court must also determine whether there was probable cause to believe that: (a) Defendant was an agent of a foreign power, and (b) the carry-on luggage searched by the Government agents was "owned," "used," or "possessed by" Defendant.[6] 50 U.S.C. § 1824(a)(3)(A)-(B) (2000). In explaining the probable cause standard in the context of a criminal search warrant, the United States Supreme Court has stated that the "task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that

---

[6] A probable cause analysis is used by federal district courts in connection with the issuance of a criminal search warrant (F.R.Crim.P. Rule 41(d)(1)) and a criminal wiretap (18 U.S.C. §§ 2510 et seq.).

contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

Upon review of the relevant classified documents that were filed by the Government, the Court finds that there was probable cause to believe that Defendant was an agent of a foreign power. 50 U.S.C. § 1824(a)(3)(A) (2000). As required by the FISA statute, the Court's finding of probable cause in this instance is not made "upon the basis of activities protected by the first amendment to the Constitution of the United States." Id. In addition, the Court finds that there was probable cause to believe that the carry-on luggage searched by the Government agents on April 29, 2004, was "owned," "used," or "possessed by" Defendant. 50 U.S.C. § 1824(a)(3)(B) (2000).

Finally, the Court finds that the minimization procedures[7] proposed by the Government in their FISA application meet the definition of minimization as contained within the FISA statute. 50 U.S.C. § 1824(a)(4) (2000).

---

[7] The minimization requirement only "obligates the Government to make a good faith effort to minimize the acquisition and retention of irrelevant information." United States v. Hammoud, 381 F.3d 316, 334 (4th Cir. 2004) (reversed on other grounds). There is no evidence indicating that the Government did not comply in good faith with the applicable minimization procedures.

### B. Certification from the High-Ranking Executive Branch Official

The Court must also determine whether the certification from the high-ranking Executive Branch official, which accompanied the Government's application to the Foreign Intelligence Surveillance Court, is "clearly erroneous." 50 U.S.C. § 1824(a)(5) (2000). The certification may be found clearly erroneous only when "the reviewing court on the [basis of the] entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

The Court has reviewed in camera the certification from the high-ranking Executive Branch official, and holds that the contents of the certification are not "clearly erroneous." 50 U.S.C. § 1824(a)(5) (2000). The "significant purpose" of the emergency FISA search, as stated within the certification, was to secure foreign intelligence information. 50 U.S.C. § 1823(a)(7) (2000); see also Duggan, 743 F.2d at 77; Badia, 827 F.2d at 1463. The "significant purpose" of the search is not affected by the Government's introduction of the information that was obtained as evidence in Defendant's criminal prosecution. Duggan, 743 F.2d at 78 ("[W]e emphasize that otherwise valid FISA surveillance is not tainted simply because the government can anticipate that the fruits of such surveillance may later be used, as allowed by [50 U.S.C.] § 1806(b), as evidence in a criminal trial.").

In addition, the certification from the high-ranking Executive Branch official clearly states that the information sought by the Government agents was foreign intelligence information, and that such information could not be reasonably obtained by normal investigative techniques. 50 U.S.C. § 1823(a)(7) (2000). There is nothing contained within the Government's Classified Ex Parte Opposition or the Sealed Exhibits that would cast doubt upon these assertions. The certification contains all of the necessary elements required by 50 U.S.C. § 1823(a)(7) (2000), and is not "clearly erroneous" in any respect. 50 U.S.C. § 1824(a)(5) (2000).

For these reasons, the Court holds that the Foreign Intelligence Surveillance Court properly relied upon the certification from the high-ranking Executive Branch official in authorizing the emergency search.

### C.   Authorization of the Emergency Search

The Attorney General may authorize an emergency FISA search (which occurs prior to the issuance of an ex parte order by the Foreign Intelligence Surveillance Court) pursuant to the requirements set forth in 50 U.S.C. § 1824(e)(1) (2000 & Supp. 2004). The Government's Opposition states that the search of Defendant's carry-on luggage on April 29, 2004, was an emergency FISA search. (Opposition at 33-34.) Upon review of the Government's

Classified Ex Parte Opposition and the Sealed Exhibits, the Court finds that all of the statutory requirements for the authorization of an emergency FISA search were properly fulfilled.

The Attorney General reasonably determined that an emergency situation existed with respect to the execution of the physical search, and that the factual basis for the issuance of an order existed under the FISA. 50 U.S.C. §§ 1824(e)(1)(B) (2000 & Supp. 2004). In addition, the Attorney General informed the Foreign Intelligence Surveillance Court at the time of the authorization that a decision had been made to execute an emergency physical search. 50 U.S.C. §§ 1824(e)(1)(A)(i) (2000 & Supp. 2004). Finally, the Attorney General submitted an application to the Foreign Intelligence Surveillance Court less than 72 hours after the physical search had been authorized. 50 U.S.C. §§ 1824(e)(1)(A)(ii) (2000 & Supp. 2004).

The Court holds that the Government followed all of the necessary requirements pursuant to 50 U.S.C. § 1824(e)(1) (2000 & Supp. 2004), and that the Attorney General lawfully authorized the emergency search that occurred on April 29, 2004.

## **CONCLUSION**

The Court has reviewed in camera the Classified Ex Parte Opposition and the Sealed Exhibits that were filed by the Government on December 16, 2008, and finds that the Foreign

Intelligence Surveillance Court properly authorized the emergency search that occurred on April 29, 2004. 50 U.S.C. § 1824(a)(1)-(5) (2000).

Defendant Noshir S. Gowadia's Motion to Suppress Evidence Obtained or Derived from FISA Search (Doc. 217) is **DENIED**.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 8, 2009.



/S/ Helen Gillmor
_____
Helen Gillmor
Chief United States District Judge

_____
UNITED STATES OF AMERICA v. NOSHIR S. GOWADIA; Cr. No. 05-00486 HG-KSC; **ORDER DENYING DEFENDANT NOSHIR S. GOWADIA'S MOTION TO SUPPRESS EVIDENCE OBTAINED OR DERIVED FROM FISA SEARCH**