IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CR NO. 05-00486 SOM-KSC |
| | ) |
|     Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION THAT |
|     vs. | ) DEFENDANT NOSHIR GOWADIA |
| | ) IS COMPETENT TO STAND |
| NOSHIR GOWADIA, | ) TRIAL |
| | ) |
|     Defendant. | ) |
| _____ | ) |

FINDINGS AND RECOMMENDATION THAT DEFENDANT NOSHIR
GOWADIA IS COMPETENT TO STAND TRIAL

Before the Court, pursuant to a referral from
Chief United States District Judge Susan Oki Mollway,
is the issue of Defendant Noshir Gowadia's
("Defendant") competency.  On November 19 and 20, 2009,
the Court held a hearing in compliance with 18 U.S.C.
§ 4247(d) to determine Defendant's competence to stand
trial.  AUSA Kenneth Sorensen appeared on behalf of the
Government.  Birney Bervar, Esq., and David Klein,
Esq., appeared on behalf of Defendant, who was also
present.

After careful consideration of the reports
prepared by Lisa Hope, Psy.D., Pablo Stewart, M.D., and

Richard Rogers, Ph.d., ABPP, the testimony presented at the hearing, and the exhibits received into evidence, the Court HEREBY FINDS AND RECOMMENDS that the district court find Defendant competent for the reasons set forth below.

<u>BACKGROUND</u>

Defendant has been charged with the following: 1) communicating national defense information to aid a foreign government, 18 U.S.C. § 794(a); 2) communicating national defense information to a person not entitled to receive it, 18 U.S.C. § 793(e); 3) unlawfully retaining national defense information, 18 U.S.C. § 793(e); 4) conspiring to export United States Munitions List controlled defense services without obtaining a validated license in violation of the conspiracy statute, 18 U.S.C. § 371, and the Arms Export Control Act, 22 U.S.C. § 2778(c); 5) exporting United States Munitions List controlled defense services without obtaining a validated license in violation of the Arms Export Control Act, 22 U.S.C.

§ 2778(c); 6) engaging in monetary transactions derived from a specific unlawful activity, 18 U.S.C. § 1957; and 7) filing a false tax return, 26 U.S.C. § 7206(1).

On April 2, 2009, Defendant filed a motion for a hearing to determine competency based on the report of Dr. Pablo Stewart, a psychiatrist retained by defense counsel to render an opinion regarding Defendant's competency to stand trial under the provisions of 18 U.S.C. § 4241, which provided that Defendant is not competent to stand trial.[1]  On April 9,

---

[1] Dr. Stewart stated, in pertinent part, that

> It is my opinion, which I hold to a reasonable degree of medical certainty that based on the results of my structured clinical interview and the MacCAT-CA Mr. Gowadia is presently incompetent to stand trial.
>
> My opinion is based on the fact that he is able to only partially assist counsel and that he is incapable of possessing a rational understanding of the proceedings against him.  At this time, however, I am unable to pinpoint the exact mental disease or defect(s) that are causing his incompetence.  It is very important to note that Mr. Gowadia did poorly on the latter half of the MacCAT-CA.  This could be explained by any number of medical

2009, Senior United States District Judge Helen Gillmor (Chief Judge at the time) orally granted the motion.

On April 17, 2009, Judge Gillmor issued an Order Directing Mental Competency Examination and Competency Hearing Pursuant to 18 U.S.C. §§ 4241(b) & 4247(b)&(c), directing that Defendant be committed to a facility for the purpose of determining whether he is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.  Forensic psychologist Dr. Hope evaluated Defendant at the Metropolitan Detention Center in Los Angeles ("MDC").  She produced her Report in accordance with 18 U.S.C. § 4241 on August 6, 2009, wherein she diagnosed Defendant with Narcissistic Personality

---

reasons including G6PD deficiency that could be affecting his cognitive functioning.

Mot. for Hearing to Determine the Competency of Def. Noshir S. Gowadia (doc. no. 327), Ex. A at 5; Def.'s Ex. 5 at 5.

Disorder (Axis II) and opined that

> Based on the information available, there is no objective evidence to indicate that Mr. Gowadia suffers from signs or symptoms of a major mental disorder, such as an affect disorder (e.g., Bipolar Disorder), psychotic disorder (e.g., Schizophrenia), or an organic disorder, that would impair his present ability to understand the nature and consequences of the court proceedings against him, or his ability to properly assist counsel in his defense.

Forensic Evaluation (doc. no. 370) at 16, 21; Govt.'s Ex. 1 at 16, 21.

Defendant's second expert, Dr. Rogers, also a forensic psychologist, diagnosed Defendant with Narcissistic Personality Disorder and Obsessive-Compulsive Personality Disorder.  Def.'s Ex. 4 at 12. Dr. Rogers explained that because Defendant's grandiosity involves classified information, it is difficult to establish whether the grandiosity qualifies for delusions.  Id.  For this reason, he offered a rule-out diagnosis of Delusional Disorder, Grandiose Subtype.  Id.  In addition, Dr. Rogers determined that Defendant has sufficient factual and

rational understanding of the proceedings against him, but that on the MacArthur Competency Assessment Test-Criminal Adjudication ("MacCAT-CA"), he "consistently scored as clinically significant impairment because of his paranoid ideas about the prosecution and his implausible thoughts that he can explain away the prosecutions case. Regarding, [sic] the case-specific information, Mr. Gowadia is dismissive of the evidence against him and markedly over-estimates his abilities." Id. Dr. Rogers further opined that Defendant "has severe impairment in his capacity to consult with counsel." Id.

The parties agree that Defendant understands the "nature and consequences of the proceedings against him" and that the disputed issues are whether he is able to "assist properly in his defense" and whether he suffers from a mental disease or defect. 18 U.S.C. § 4241(d).

EVIDENCE

A.   Credibility of Experts

Of the experts who testified, the Court finds the testimony of Dr. Hope, an expert in the field of forensic psychology, to be most persuasive.  The Court concludes that Dr. Rogers is a non-credible witness based in large part on his responses to cross-examination.  After considering his memory and manner while testifying, whether other evidence contradicted his testimony in light of all the evidence, the Court questions the believability of Dr. Rogers, and gives little or no weight to his conclusions and opinions that Defendant has a severe impairment in his capacity to consult with counsel, that Defendant is not capable of carrying on a rational conversation with his counsel, and that his capacity to consult with counsel is so compromised that he is unable to assist properly in his defense and therefore incompetent.  For example, Dr. Rogers admitted on cross-examination that he made a mistake in scoring part of the Evaluation of Competency

to Stand Trial-Revised ("ECST-R") he administered to Defendant.  Additionally, the rating point values assigned by Dr. Rogers to certain of Defendant's responses to ECST-R questions appear to be unreasonable or disproportionately high.  Unreasonably high item scale score are likely to result in an inaccurate or biased outcome when the scale scores are converted to a T-score range which is used in determining whether a defendant has an impairment and the severity of the impairment, if any.  Finally, Dr. Rogers' findings and conclusions are inconsistent with the Court's observations of the interaction between Defendant and his counsel during hearings in this criminal case and in the civil forfeiture case, <u>United States v. 575 N. Holokai Rd.</u>, Civil No. 05-00704 HG-KSC, as the Court will discuss in greater detail below.

        The Court likewise finds that Dr. Stewart is a non-credible witness and gives little to no weight to his conclusions and opinions that Defendant, suffering from some unidentified mental disease or defect and

having no rational understanding of his legal situation
and no rational ability to consult counsel, is
incompetent to stand trial.[2]  Dr. Stewart's conclusions
are based on a short, rather limited examination of
Defendant that did not include many of the factors,
test results, and evidence considered by Dr. Hope.  He
admitted that he could not pinpoint a specific mental
disease or defect from which Defendant suffered.  In
fact, Dr. Stewart testified that Defendant is not
competent but he does not know why.  Absent a specific
diagnosis, his finding that Defendant suffers from a
mental disease or defect is highly questionable.  Dr.
Stewart also failed to conduct intelligence or
personality tests and did not interview anyone
associated with Defendant or who would have relevant
information concerning Defendant.  His conclusions were
based in large part, if not solely, on Defendant's
responses in the MacCAT-CA.  However, after hearing Dr.

---

[2]  Defense counsel explained that they retained Dr.
Stewart as an "issue-spotter," not to complete a full
work-up of Defendant.

9

Stewart's testimony, questioning Dr. Stewart about the results of the test, and given the inconsistency between the assessment of Defendant, using the MacCAT-CA, by Drs. Stewart and Rogers, it appears that there is a degree of subjectivity associated with the MacCAT-CA.  Bearing this in mind, the Court finds that the conclusions offered by Dr. Stewart, which are primarily based on the results of the MacCAT-CA, are not adequately supported and are unreliable.  The credibility of the test results and his opinion are further undermined by Dr. Stewart's concession and acknowledgment that although Defendant complained of fatigue towards the end of the administration of the MacCAT-CA and requested a candy bar to eat, Dr. Stewart "plowed ahead" with the testing process, and that there was a corresponding degradation in the scores apparently related to Defendant's decreased cognitive ability.  In summary, Dr. Stewart bases his conclusions upon limited test data obtained under questionable circumstances.

B.   <u>Dr. Hope's Testimony, Findings, and Conclusions</u>

Dr. Hope had the opportunity to observe and/or interview Defendant over a period of three months, on at least nine occasions, and had available to her observations, information, and impressions from others who came into contact with or evaluated Defendant during his stay at MDC.  Dr. Hope testified that Defendant's Narcissistic Personality Disorder is not a mental disease or defect and does not rise to the level of delusional.  She explained that many of the statements made by Defendant, although exaggerations of his accomplishment and self, were not delusions but were founded in truth and were well-established, well-placed achievements that are not false, unshakable beliefs.  Dr. Hope reached this conclusion by considering information provided by Mr. Sorensen, references from Defendant, discovery materials made available to her, and the totality of the comprehensive evaluation process.

In her testimony, Dr. Hope acknowledged that

Defendant expressed frustration with the attorney-
client relationship and felt that counsel did not
understand his views or his understanding of the law,
but noted that Defendant could defer to them for
procedural events, such as the filing of motions.  Dr.
Hope also testified that rational explanations exist
for Defendant's frustrations and concerns.  For
example, Defendant believes his counsel are less
knowledgeable with regards to certain information
related to this case, and is particularly frustrated
because counsel received such information from an
agent.  Defendant's concern is fairly rational because
the information has come from an agent of the
Government.

    With respect to Defendant's interaction with
counsel,[3] Dr. Hope made the following observations:
Defendant listened and responded appropriately to
counsel; he was respectful of counsel's questions; he

_____

    [3]  Dr. Hope had an opportunity to observe
Defendant's interaction with Mr. Klein on November 17,
2009.

responded with appropriate explanations; he was able to confirm counsel's summarization of his statements; and there was no evidence of grandiosity or the self-inflated presentation previously observed. Significantly, Dr. Hope testified that the lack of grandiosity and self-inflated presentation in this interaction demonstrates that Defendant has some control over what he chooses to do.  In fact, Defendant told Dr. Hope that he chooses and works to be this way.

Dr. Hope also described Defendant as high functioning, basing her assessment on the tests administered; his interaction with his attorneys; his interactions generally; his rich career; the work he had done and attained; his international businesses; his interaction/relationships with a number of individuals from various countries, including high-level officials; and financial success.

LEGAL STANDARD

Competency hearings are conducted in accordance with 18 U.S.C. § 4247(d).[4]  If, following the hearing, the Court

> finds by a preponderance of the evidence
> that the defendant is presently suffering
> from a mental disease or defect rendering
> him mentally incompetent to the extent
> that he is unable to understand the nature
> and consequences of the proceedings
> against him or to assist properly in his
> defense, the court shall commit the
> defendant to the custody of the Attorney
> General.

18 U.S.C. § 4241(d); Drope v. Missouri, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected

---

[4]  Section 4247(d) provides: "At a hearing ordered pursuant to this chapter the person whose mental condition is the subject of the hearing . . . shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing."  18 U.S.C.A. § 4247(d).

to a trial."). The Government has the burden of
establishing, by a preponderance of the evidence, that
the defendant is competent to stand trial. United
States v. Frank, 956 F.2d 872, 875 (9th Cir. 1991).

    "To be competent to stand trial, a defendant
must demonstrate an ability 'to consult with his lawyer
with a reasonable degree of rational understanding' and
a 'rational as well as factual understanding of the
proceedings against him.'" Douglas v. Woodford, 316
F.3d 1079, 1094 (9th Cir. 2003) (quoting Godinez v.
Moran, 509 U.S. 389, 396 (1993) (internal quotations
and citation omitted)); Boag v. Raines, 769 F.2d 1341
(9th Cir. 1985); Dusky v. United States, 362 U.S. 402,
402 (1960). It is not enough that a defendant is
oriented to time and place and has some recollection of
events. Id. He must not only have the present ability
to understand the charges against him, but also
"communicate effectively with defense counsel." Cooper
v. Oklahoma, 517 U.S. 348, 368 (1996). The relevant
inquiry is a defendant's ability to assist, not his

15

willingness or unwillingness to do so.  United States
v. Vachon, 869 F.2d 653, 655 (1st Cir. 1989) ("[T]he
legal question before the judge concerned not what he
*did* do.  It concerned what he was *able* to do.  The
district court found that he was *unwilling* to assist,
not that he was '*unable*' to do so.").

     Defense counsel's representations concerning
the competence of his client is a factor that should be
considered.  Drope, 420 U.S. at 177 n.13 (noting that
"an expressed doubt . . . by one with the closest
contact with the defendant is unquestionably a factor
which should be considered" (internal punctuation and
citation omitted)).  However, a court need not "accept
without question a lawyer's representations concerning
the competence of his client." Id.  Other factors the
court may consider include its own observations of the
defendant's comportment and medical opinions.  Bryson
v. Ward, 187 F.3d 1193, 1201 (10th Cir. 1999); United
States v. Nichols, 56 F.3d 403, 411 (2d Cir. 1995).

## DISCUSSION

After careful consideration of the testimony and reports presented, the Court finds that the Government has proved, by a preponderance of the evidence, that Defendant is not presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.  Dr. Hope diagnosed Defendant with Narcissistic Personality Disorder but concluded that he does not suffer from a mental disease or defect. Based on the testimony presented and the Court's observations of Defendant, the Court agrees, and further concludes that he is a high functioning, very intelligent individual.

Even if his Narcissistic Personality Disorder constitutes a mental disease or defect, the Court finds that Defendant has demonstrated an ability to consult with Mr. Klein and Mr. Bervar with a reasonable degree

of rational understanding and he has a rational as well
as factual understanding of the proceedings against
him.  Douglas, 316 F.3d at 1094.  Indeed, defense
counsel concedes that Defendant understands the nature
and consequences of the proceedings against him.  The
Court's inquiry is therefore limited to whether he is
able to assist in his defense, or whether he has an
ability to consult with counsel with a reasonable
degree of rational understanding.  There is no dispute
that Defendant is frustrated with the attorney-client
relationship due to his belief that he possesses
superior knowledge compared to his counsel; his belief
that his lawyers are intimidated by the prosecution;
and that his counsel are unable to comprehend and
appreciate his explanation of various technologies and
concepts, among other things.  However, as explained by
Dr. Hope, rational explanations exist for Defendant's
concerns.  Moreover, Defendant has acknowledged that he
could defer to counsel for procedural events, such as
the filing of motions.

Despite his frustrations, Defendant is able to consult with counsel with a reasonable degree of rational understanding.  Dr. Hope observed Defendant listening and responding appropriately to counsel; being respectful of counsel's questions; responding with appropriate explanations; and confirming counsel's summarization of his statements.  Most notably, Dr. Hope indicated that Defendant has control over what he chooses to do and he has so stated.

This credible evidence leads the Court to believe that any impairment of Defendant's ability to assist in his defense can be attributed to his unwillingness to consult with counsel, as opposed to an inability to consult with counsel.  <u>Vachon</u>, 869 F.2d at 655.  The critical distinction here is that Defendant is **able** to consult with his counsel, but is at times frustrated and unwilling to do so because he disagrees with counsel's approach, believes that counsel do not understand some of the different or specialized concepts at issue in this action, and has strong views

19

of how counsel should present his defense.

Defense counsel has expressed their concerns about Defendant's ability to assist in his defense and believe that he is unable to consult counsel.  While the Court has considered counsel's comments in making its determination, it need not accept without question these representations, and finds that counsel's representations are outweighed by the compelling evidence presented by Dr. Hope.  It appears, and the parties agree, that Defendant is a difficult and challenging client.  However, existing disputes between counsel and Defendant and the inherent difficulties in representing Defendant, whose specialized knowledge has been a source of conflict in this case,[5] cannot and do not provide a basis to find Defendant incompetent.

Also being considered as a factor in this competency recommendation are this Court's observations of Defendant's comportment.  The Court has had a number

---

[5]   The conflict arises because Defendant believes, and in some instances legitimately so, that he has a greater understanding of the technical information and laws that are the subject of this prosecution.

of opportunities, since early 2006, to observe
Defendant in both this action and the related civil
forfeiture action.  Based upon these extended and
repeated observations, and for the reasons stated
above, the Court concludes that Defendant has
sufficient mental capacity to stand trial in that he is
able to assist properly in his defense.  United States
v. Oliver,  626 F.2d 254, 258-59 (2d Cir. 1980)
(finding that district judge reliably relied on his
extended observations of the defendant in deciding that
he had sufficient mental capacity to stand trial).
Significantly, the Court has observed Defendant (1)
consult with his counsel with a reasonable degree of
rational understanding and (2) communicate effectively
with his counsel.  In the civil action, for example,
Defendant engaged and interacted with Mr. Klein, and,
with Mr. Klein's involvement, arrived at decisions
involving the sale of his home, including but not
limited to the  retention a real estate agent,
reviewing multiple offers for the purchase of the

property, submitting counteroffers, extending
deadlines, and entering into a sales contract, etc.
Additionally, Defendant has consistently responded
intelligently, meaningfully, and rationally to
questions posed by this Court concurring a wide variety
of matters in this action and the civil forfeiture
action.  Id. at 259 (intelligent responses to questions
put to the defendant by the court provided further
evidence of his competency).

Accordingly, the Court hereby finds that
Defendant is competent to proceed to trial.
Defendant's Narcissistic Personality Disorder is not a
mental disorder or defect.  Moreover, Defendant
concedes that he fully understands the nature and
consequences of the proceedings against him and the
Court finds that he is able to properly assist in his
defense; that is, he has the present ability to consult
with his lawyer with a reasonable degree of rational
understanding.

<u>CONCLUSION</u>

Based on the foregoing, the Court HEREBY FINDS AND RECOMMENDS that the district court find Defendant competent to stand trial.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, November 20, 2009.



_____
Kevin S.C. Chang
United States Magistrate Judge

CV 05-00486 SOM-KSC; <u>UNITED STATES OF AMERICA V. GOWADIA</u>; FINDINGS AND RECOMMENDATION THAT DEFENDANT NOSHIR GOWADIA IS COMPETENT TO STAND TRIAL