IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cr. No. 05-00486 SOM |
| | ) | |
| Plaintiff, | ) | ORDER ADOPTING NOVEMBER 20, |
| | ) | 2009, FINDINGS AND |
| vs. | ) | RECOMMENDATION THAT DEFENDANT |
| | ) | NOSHIR GOWADIA IS COMPETENT |
| NOSHIR S. GOWADIA, | ) | TO STAND TRIAL |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER ADOPTING NOVEMBER 20, 2009, FINDINGS AND RECOMMENDATION
THAT DEFENDANT NOSHIR GOWADIA IS COMPETENT TO STAND TRIAL

I.    INTRODUCTION.

On November 20, 2009, Magistrate Judge Kevin S.C. Chang issued his Findings and Recommendation that Defendant Noshir Gowadia is Competent to Stand Trial ("F&R"). See Docket No. 459. The Magistrate Judge determined that the Government had proven by a preponderance of the evidence that Gowadia was not suffering from a mental disease or defect that rendered him mentally incompetent to stand trial. Instead, according to the Magistrate Judge, Gowadia is able to understand the nature and consequences of the proceedings against him and is able to assist in his defense. The Magistrate Judge found Gowadia's experts lacking in credibility with respect to their opinions that Gowadia was incompetent to stand trial. By contrast, the Magistrate Judge found the Government's expert credible in opining that Gowadia was competent to stand trial. Based on the Government's expert's observations of Gowadia and opinion that he is competent to stand

trial, along with the Magistrate Judge's own discussions and observations of Gowadia throughout court proceedings, the Magistrate Judge issued a thoughtful, detailed, and well-reasoned F&R.

On November 30, 2009, Gowadia filed objections to the F&R, asserting 1) that this court cannot make credibility determinations through de novo review of the record before the Magistrate Judge; and 2) that the Magistrate Judge had erred in determining that Gowadia is able to assist in his defense.  This court rejects Gowadia's argument that this court must conduct an evidentiary hearing.  Upon de novo review of the record, this court agrees that Gowadia's experts' determination of incompetence was not credible and that the Government has proven by a preponderance of the evidence that Gowadia is not suffering from a mental disease or defect rendering him incompetent to stand trial.  This court also agrees that Gowadia is able to understand the nature and consequences of the proceedings against him and is able to assist in his defense. The court therefore adopts the F&R and rules that Gowadia is competent to stand trial.

II.      LEGAL STANDARD.

Gowadia does not dispute the legal standard for competency set forth by the Magistrate Judge in the F&R.  See Memorandum in Support of Objections and Request for De Novo

2

Hearing at 6 (Nov. 30, 2009) (Docket No. 465) ("The Magistrate Judge did properly set forth the standard to determine competency" (quoting F&R at 15-16)).  This court therefore adopts and incorporates herein the legal standard set forth on pages 14 to 16 of the F&R.  Essentially, under 18 U.S.C. § 4241(d), if after a competency hearing,

> the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.

There is no dispute that Gowadia understands the nature and consequences of these proceedings.  See Transcript of Proceedings at 317 (Nov. 20, 2009) (Docket No. 461) (counsel for Gowadia and the Government stating that there is no dispute as to whether Gowadia has the ability to understand the proceedings against him) and at 337 (Gowadia's counsel stating, "Now, we have agreed earlier he doesn't have a problem with the factual understanding.  He knows he's in court.  He knows those are the marshals behind him, and his attorneys next to him, and who the judge is, and the prosecutors.  That's no[t] the issue.  It's the ability to assist counsel.").  The issue here is whether Gowadia has a mental disease or defect that renders him mentally incompetent to "assist properly in his defense."  See id. at 317

3

(Gowadia's counsel stating, "The issue is the ability to communicate with counsel and assist in his defense.").

In this court's order of October 30, 2009, denying Gowadia's request that this judge determine his competency, this court asked the Magistrate Judge to issue findings and recommendations as to Gowadia's competency motion.  See Order Denying Noshir S. Gowadia's Motion[] . . . For an Article III Judge to Adjudicate Competency at 7 (Oct. 30, 2009) (Docket No. 431).  Pursuant to 28 U.S.C. § 636, this court now reviews de novo those portions of the F&R to which Gowadia has objected.

III.    ANALYSIS.

      A.    Gowadia Has Established No Valid Reason That Magistrate Judge Chang Could Not Hold the Competency Hearing.

Gowadia initially objects to the Magistrate Judge's holding of his competency hearing, arguing that a district judge cannot make a de novo determination of competency from the record.  This court has already rejected that argument, and Gowadia asserts no good reason for this court to reconsider its earlier ruling.  See Order Denying Noshir S. Gowadia's Motion[] . . . For an Article III Judge to Adjudicate Competency at 3-7 (Oct. 30, 2009) (Docket No. 431).  For the reasons set forth in that earlier order, and because the record abundantly demonstrates the lack of credibility of Gowadia's experts, the court rejects Gowadia's argument that only the trial judge can

hold a competency hearing and that competency cannot be determined from the present record.

B.   The Government Has Proven By a Preponderance of the Evidence that Gowadia Does Not Have a Mental Disease or Defect that Renders Him Mentally Incompetent To Assist in His Defense.

Gowadia next challenges the F&R's conclusion that the Government proved by a preponderance of the evidence that Gowadia does not have a mental disease or defect rendering him mentally incompetent to assist in his defense.  After a de novo review of the entire record, this court agrees with the Magistrate Judge, adopts the F&R, and rules that Gowadia is competent to stand trial.

Simply put, the experts who testified that Gowadia is not competent to stand trial are not credible.  In contrast, the Government's expert credibly testified that Gowadia is mentally competent to stand trial.

1.   Dr. Pablo Stewart.

The Magistrate Judge determined that Gowadia's expert, Dr. Pablo Stewart, was not credible.  This court agrees and adopts the F&R, supplementing it as set forth below.

Stewart made his diagnosis after spending approximately five hours with Gowadia.  See Testimony of Pablo Stewart, M.D., at 230 (Nov. 20, 2009) ("Over the course of the two days, I spent approximately five hours with Mr. Gowadia.").  Stewart was not able to give an exact diagnosis based on that short time-frame.

Id. at 236-37 and at 241 ("but I just--based on my time with him, I wasn't able to come up with a diagnosis").  Stewart called his examination of Gowadia a "limited review."  Id. at 242.

Stewart applied the MacArthur Competency Assessment Tool ("MacCAT").  Id.; Gov't Ex. 6.  This is a structured test that involves an examiner's subjective interpretations.  See Testimony of Lisa Hope, PsyD, at 305 (Nov. 20, 2009) ("Q: Now, is there room, on the MacCAT, for subjective interpretations on the part of the examiner?  A: As structured as it is, yes.").

Stewart found that Gowadia "seemed to tire over a period of time," yet Stewart plowed ahead with the test.  See Stewart Test. at 232, 252.

On the MacCAT administered by Stewart, Gowadia scored 12 out of 16 on understanding (corresponding to Minimal/No Impairment), 11 out of 16 on reasoning (corresponding to Minimal/No Impairment), and 8 out of 12 on appreciation (corresponding to Clinically Significant Impairment).  See Stewart Test. at 235; Gov't Ex. 6.  Stewart testified that Gowadia does not "possess a rational understanding of the legal situation."  Stewart Test. at 235.  He concluded that Gowadia "was incompetent based on his not having a rational understanding of his legal situation as well as being able to rationally assist counsel."  Id. at 236 and at 241 ("I found that Mr. Gowadia was

6

only partially able to assist counsel, and he does not have a
rational understanding of the proceedings against him.").

Stewart's reliance on the MacCAT as his only test calls
into question his conclusions. See Testimony of Lisa Hope at 300
(Nov. 20, 2009) ("There is widespread agreement, amongst forensic
evaluators, that using the MacCat alone is really not obtaining
enough information about the area of competence."). Moreover,
the way Stewart treated the MacCAT is questionable. The
appreciation section of the MacCAT corresponds to questions 17
through 22 and provides for a maximum of 12 points. Had Gowadia
scored 9 instead of 8, he would have scored in the "Mild
Impairment" range. Had he scored 11 instead of 8, he would have
been in the "Minimal/No Impairment" range. An examination of
Stewart's subjective scoring of Gowadia on these questions raises
serious questions about Stewart's heavy reliance on the MacCAT.

Each of questions 17 through 22 offered a score ranging
from 0 to 2. Two points were given if the reason supporting the
answer was "clearly plausible," 1 point if it was "questionably
plausible," and 0 if it was "clearly implausible" and appeared to
be based on a delusional premise or serious distortion of
reality, or if the subject offered no reason or failed to answer.
Stewart scored Gowadia as follows:

         Item 17: 1
         Item 18: 2
         Item 19: 2
         Item 20: 1

Item 21: 1
Item 22: 1

Item 21 asked, "Compared to other people found guilty of this kind of crime, do you think you will get more punishment, less punishment, or about the same punishment if you are found guilty?"  Gowadia answered, "Less punishment," reasoning that he would get a lesser sentence "because of all the service I have done for this country."  Stewart said that he gave Gowadia a 1 for Item 21 because his reasoning was only questionably plausible.  See Stewart Test. at 275.  Stewart testified that he did not know whether Gowadia had, in fact, provided valuable service to this country.  Stewart said the score of 1 reflected the possibility that service to this country could cut both ways. In other words, service could be a mitigating factor, but could also cause a judge to enhance the sentence.

Stewart's testimony indicates the subjective nature of the MacCAT, as Stewart did not actually research or determine whether sentences were usually mitigated by service to the country.  Item 21 asked whether Gowadia thought he would get more or less punishment.  Although Gowadia's sentence could theoretically be enhanced if he were deemed to have violated a position of public trust, Gowadia's belief that he would get less punishment because of his service to the country is more than "questionably plausible."  Indeed, the advisory sentencing guidelines contemplate that a court may take service to the

8

country into account in determining where in a guideline range a sentence should fall.  See United States Sentencing Commission Guidelines Manual ("USSCGM"), Chapter Five, Part H, Introductory Commentary (noting that, although certain circumstances, including military or public service, are not relevant to determining whether a sentence should be outside a guideline range, those circumstances may be examined in determining where a sentence should fall within the guideline range); see also USSCGM § 3B1.3 (noting that a court may increase an offense level if the defendant abused a position of public trust).

Item 22 asked Gowadia to assume that a prosecutor would recommend less punishment if Gowadia pled guilty and then asked, "Compared to other people facing charges like yours, would you be more likely, less likely, or just as likely to plead guilty?" Gowadia answered, "Less likely," reasoning that he was less likely to plead guilty because, to do so, he would have to commit perjury.  Stewart gave this answer a score of 1, reasoning that Gowadia's answer was not very rational.  See Stewart Test. at 279.  However, Stewart gave no basis for that reasoning.

Perhaps Stewart assumed that Gowadia would not have to lie to plead guilty.  But the basis of that assumption is unclear.  Stewart appeared to be focused on whether the Government had prosecuted individuals in the past for committing perjury by pleading guilty, rather than on whether any lying was

required.   See id. at 278-79.  This focus was irrelevant to the question, which asked Gowadia the likelihood of his pleading guilty.

The subjectiveness of Stewart's interpretation of Gowadia's answer is demonstrated by Dr. Richard Rogers's administration of the same MacCat.  On Item 22, Rogers gave Gowadia score of 2 for a very similar response.  See Gov't Ex. 4 (scoring a 2 for: "Because I feel that I have not done anything wrong and pleading guilty would be lying.  More expeditious but not [unintelligible].").

The unimportance of honesty to Stewart is demonstrated by Stewart's analysis concerning Item 15, which appeared to be designed to address Gowadia's ability to reason (as opposed to Items 17 through 22, which appeared designed to test Gowadia's appreciation).  Item 15 built on a factual pattern presented in Items 1 through 14 and hypothesized that a defendant, Fred, had gotten into a bar fight with Reggie and was probably going to be found guilty of aggravated assault and possibly sentenced to up to 10 years in prison.  Fred, who had consumed a lot of beer before the fight, thought that he had seen Reggie reaching for a knife.  Fred had been frightened because Reggie had been acting like a tough guy.  See Govt. Ex. 6, Items 9, 12, and 13.  Item 15 asked Gowadia whether Fred should plead guilty to a less serious charge and serve a sentence of 6 months in jail, or plead not

guilty and go to trial, or whether Gowadia had no suggestion as to what Fred should do.  Gowadia answered that Fred should plead not guilty.  When asked what advantage pleading not guilty would provide, Gowadia answered, "[B]eing honest."  When asked the disadvantage of pleading not guilty, Gowadia answered that Fred could receive a 10-year sentence.  See Govt. Ex. 6.

        Stewart gave Gowadia a score of 1 on Item 15, explaining that honesty is not an advantage to a defendant for purposes of pleading guilty.  Stewart thought that not exposing oneself to a potential 10-year sentence was an advantage, but identified no advantage in maintaining one's innocence or not lying.  See Stewart Test. at 281-82, 289, 295.  In other words, Stewart thought that Gowadia lacked rational reasoning merely because Gowadia thought that honesty was important.  Stewart's reasoning does not entirely take into account the factual situation presented to Gowadia.

        In saying honesty was important, Gowadia was considering a hypothetical defendant (Fred), who thought that he saw the hypothetical victim (Reggie) reaching for a knife during a bar fight.  Fred was frightened because Reggie was acting like a tough guy.  While Fred may have faced a likely conviction, Gowadia's answer to Item 15 (noting the advantage of being honest) was not necessarily only questionably plausible.  Stewart testified that Gowadia's answer was lacking because it pertained

11

to a spiritual or existential advantage, not a legal advantage. Id. at 289.  But Item 15 did not ask Gowadia to list only legal advantages.  Instead, Item 15 asked for the advantages of pleading not guilty.  Assuming that Fred saw a knife and thought that Reggie was acting tough, refusing to plead guilty gave Fred the advantage of maintaining his integrity.

Stewart does not explain to this court's satisfaction why a claim of innocence and reliance on honesty is either irrational or an indication that Gowadia is unable to assist in his defense.  For these reasons, and for the reasons set forth in the F&R, Stewart was simply not credible in his determination that Gowadia was unable to rationally assist in his defense, making him incompetent to stand trial.

2.   Richard Rogers, PhD.

The Magistrate Judge also correctly determined that testimony and opinions by Dr. Rogers, another Gowadia expert, were not credible.  This court, after de novo review, agrees with the F&R and adopts its determination that Rogers's testimony and opinions lacked credibility.

Rogers's contact with Gowadia was a little more extensive than Stewart's.  Rogers saw Gowadia over a three-day period.  See Testimony of Richard Rogers, PhD, at 110 (Nov. 19, 2009) (stating that 1) on the first day he observed Gowadia with counsel for a "very short period of time" and then continued to

12

see Gowadia for several hours; 2) on the second day he spent approximately six hours with Gowadia; and 3) he did not recall how much time he spent with Gowadia on the third day).  Rogers testified that he observed Gowadia expressing "a considerable amount of frustration at his ability to communicate with Mr. Klein[, his counsel]."  Id. at 113.  Rogers said that he heard Gowadia stating that Gowadia had been able to make more progress with a "mentally retarded person than he was with Mr. Klein," which Rogers interpreted as a statement by Gowadia that he found it difficult to explain things to his counsel.  Id. at 114.

In relevant part, using the Structured Interview Field for Diagnosis of Personality Disorders ("SIDP"), Rogers determined that Gowadia had a Narcissistic Personality Disorder, meaning that Gowadia had "a markedly inflated sense of . . . self-importance."  Id. at 117.  Rogers used the Schedule of Active Disorders and Schizophrenia ("SADS-C") to determine that Gowadia was "bordering on what people might consider to be delusional."  Id. at 118-20.

Like Stewart, Rogers gave Gowadia the MacCAT, from which Rogers determined that Gowadia had a factual understanding of this case but that he was not rational.  See id. at 126.  In other words, Rogers thought that, because of Gowadia's Narcissistic Personality Disorder or grandiosity, Gowadia had an impaired ability to reason.  Id. at 127.  Rogers reasoned that Gowadia was impaired because Gowadia expressed a desire to

testify, thinking that he could explain why he was not guilty and that he could cross-examine the Government's witnesses and "make them cry." Id. at 127-28.

Like Stewart, Rogers gave Gowadia an 8 in the appreciation portion of the MacCAT. See Govt. Ex. 4. This meant that Gowadia scored in the "Clinically Significant Impairment" category. Id. However, like Stewart's scores, Rogers's scoring appears to be influenced by questionable assumptions.

For example, Rogers gave Gowadia a 0 for Item 20. Item 20 asked, "Compared to other people who are charged with the same offense as you are, do you think you are more likely, less likely, or just as likely to be found guilty." Id. Gowadia answered, "Less likely" because he thought he could demonstrate "what the prosecutor is saying is not correct" and because the witnesses for the prosecution would be lying. The score of 0 meant that Rogers found Gowadia's response to be "clearly implausible" or "based on a delusional premise or a serious distortion of reality." Rogers, however, does not indicate why he concluded that Gowadia was incapable of explaining why he should be found not guilty. The concern this court has is whether Rogers would automatically assign a score of 0 to any person who thought that a jury would believe him or her. If so, Rogers would find every person maintaining innocence mentally

incompetent to stand trial, including an innocent person who expected to be acquitted at trial.

Like Stewart, Rogers gave Gowadia a 1 for Item 21. This was the question that asked whether Gowadia thought that, if found guilty, he would receive more, less, or the same punishment as other people found guilty of his type of crimes.  Gowadia answered that he thought he would receive less punishment because of his service to the country.  As discussed above, the advisory sentencing guidelines contemplate that a court may take into account service to the country in determining where in a guideline range a sentence should fall.  It is therefore difficult to see why Gowadia's response is only "questionably plausible."  Had Gowadia's response been deemed "clearly plausible," Gowadia would not have fallen within the "Clinically Significant Impairment" range and would instead have been in the "Mild Impairment" range.  <u>See</u> Govt. Ex. 4.

Rogers also administered the ECST-R, a test that Rogers wrote.  <u>Id.</u> at 128.  Rogers says that, in the "consult with counsel scale," Gowadia received a "T-score" of 78, which Rogers says falls into the 97th percentile, which means that only 2 to 3 percent of all defendants have a harder time communicating with their counsel.  <u>Id.</u> at 129-30; 179.  Rogers based this determination on Gowadia's statements that 1) if Gowadia had competent counsel, all or nearly all of the charges would have

15

been dropped by now because Gowadia would be able to demonstrate that the charges were trumped up (id. at 131); 2) Gowadia could not explain things to counsel that Gowadia could have explained to a mentally retarded person (id. at 132); 3) mistakes had been made as to the classification of documents (id. at 134); and 4) Gowadia's confession had to have been coerced because it included technically incorrect information (id. at 135).

Rogers concluded, to a reasonable degree of psychological certainty, that Gowadia was incompetent to stand trial because of the combination of his "incapacity to consult with counsel" and his impaired reasoning. Id. at 136. Rogers said that Gowadia's "markedly impaired reasoning" was demonstrated by Gowadia's belief that he could testify and "sweep away the whole prosecution's case" with his explanations. Id. at 137. Absent an explanation by Rogers as to why Rogers finds that belief untenable, the court finds Rogers's conclusion unreliable. The court is not saying Rogers must be wrong; the court is only saying that, absent a description of the bases for an assumption, the court finds no reason to give it credence.

Rogers also appears to have concluded that Gowadia was incompetent based on Gowadia's difficulties communicating with counsel. The reliance on these communication difficulties is questionable. In the ECST-R, Rogers gave a 3 out of 4 to Gowadia's "expectations of attorney," "agreements and

16

disagreements," "settling disagreements," and "impaired communications."  These scores added up, along with a score of 1 in the "Knowledge of attorney's expectations of defendant," to a raw score of 13, which Rogers translated into a T-score of 78. See Govt. Ex. 5.  However, as the Magistrate Judge noted, there is a difference between being able to assist counsel and being willing to assist counsel.  See F&R at 15-16 (citing United States v. Vachon, 869 F.2d 653, 655 (1st Cir. 1989) (noting that, for purposes of a defendant's mental competency, the legal question is whether the defendant is able to assist counsel, not whether the defendant did or was unwilling to do so)).  This court agrees with the Magistrate Judge that, as outlined by Rogers, Gowadia exhibited an unwillingness to assist or communicate with counsel at times, but that Rogers did not establish that this unwillingness made Gowadia unable to assist in his defense and therefore incompetent to stand trial.

Particularly telling on this point is Gowadia's counsel's statements to Judge Helen Gillmor that counsel thought Gowadia was competent, although Gowadia's counsel subsequently noted that they were having a lot of trouble communicating with Gowadia.  See Transcript of Proceedings at 5 (Apr. 6, 2009) ("And, quite frankly, we thought that he would go out and examine Mr. Gowadia and find him competent, and we would stick it in the file so we had it documented."); id. at 7 (counsel told the court

that they were having "a lot of difficulty trying to relay concepts to Mr. Gowadia").  Additionally, this court agrees with the Magistrate Judge that the rating point values assigned by Rogers to Gowadia's responses to ECST-R questions appear to be unreasonably high.

Finally, as the Magistrate Judge noted, Roger's opinions are inconsistent with the court's own observations. Although this judge has not had the same degree of interaction with Gowadia as the Magistrate Judge, this judge has observed Gowadia communicating with his counsel at hearings.  This court's observations are also consistent with the testimony of Special Agent Tyrone C. Arnold, who testified that, although he had no idea what Gowadia and his counsel were talking about, Arnold had observed "back and forth" communication between Gowadia and his counsel, and that Gowadia appeared "alert" and "engaged."  Id. at 95-98.

### 3.   Dr. Lisa Hope.

Agreeing with the Magistrate Judge's determination that Dr. Lisa Hope, the Government's expert, credibly testified that Gowadia is competent to stand trial, this judge adopts the F&R with respect to its discussion of Dr. Hope.  Dr. Hope is a forensic psychologist employed by the Federal Bureau of Prisons at the Metropolitan Detention Center in Los Angeles.  See Transcript of Proceedings at 6 (Nov. 19, 2009).  Hope has

18

conducted approximately 500 competency evaluations, finding some of the individuals incompetent.  Id. at 11.  Of the last five competency examinations she has performed for defendants from this district, for example, she has found three to have been mentally incompetent to stand trial.  Id.  Hope examined Gowadia over a three-month period, conducting at least eight sessions with him.  Id. at 20, 35.  Hope also spoke with "anybody who ha[d] any kind of contact with him [Gowadia] while he's at our facility."  Id. at 35.

Based on her examination of Gowadia, Hope determined that Gowadia had a "very good understanding of his charges."  Id. at 32.  "He clearly understands the court, how the court works, who the court participants are."  Id.  Hope noted that Gowadia was frustrated with his attorneys, complaining that his attorneys did not understand his views and his understanding of the law. Id. at 33.  Hope testified that Gowadia did not trust his lawyers because they had received a classified information briefing from a Government agent and because they might be "accepting everything the Government tells them."  Id. at 72-73.

Hope diagnosed Gowadia with a Narcissistic Personality Disorder, which she described as "a grandiose sense of self, kind of entitlement, a belief that one is special or unique, or perhaps better than others."  Id. at 40.  She testified on cross-examination that Gowadia exaggerated, saying things like "I

19

visualize things faster than computers." Id. at 61.  She noted, however, that, Gowadia is a "high-functioning individual."  While he "does have this inflated sense of self, there is actually also quite a lot of truth to some of his achievements that he talks about."  Id. at 40-41.  She also noted that Gowadia "demonstrated some control over the grandiosity and the overall narcissism," as evidenced by his ability to stop talking about classified information.  Id. at 43.  Hope testified that she watched and listened to Gowadia talking with his counsel, stating that Gowadia listened and responded appropriately and that his counsel was able to "put his hand up" so as not to be interrupted by Gowadia.  Id. at 44.  Although Hope testified that Gowadia was probably a "difficult client," Hope testified that she was unable to identify "any mental disease or defect" that Gowadia had.  Id. at 46, 75.  She also testified that "it seemed like he had the ability to assist counsel."  Id. at 79.  Given the totality of Hope's examination, this court agrees with the Magistrate Judge that her testimony was credible.

This court therefore agrees with the F&R's determination that the Government has proven by a preponderance of the evidence that Gowadia is not suffering from a mental disease or defect that renders him mentally incompetent to assist in his defense.  This court agrees that Gowadia's Nacissistic Personality Disorder does not rise to the level of a mental

disease or defect, but, even if it does, Gowadia is still able to consult with and assist his attorneys.  The court therefore adopts the F&R and determines that Gowadia is competent to stand trial.

IV.      <u>CONCLUSION.</u>

        For the foregoing reasons, the court adopts the well-reasoned F&R (Docket No. 459) in its entirety and rules that Gowadia is competent to stand trial.


        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, January 21, 2010.



                        <u>/s/ Susan Oki Mollway </u>
                        Susan Oki Mollway
                        Chief United States District Judge




<u>United States of America v. Gowadia</u>, Crim. No. 05-00486 SOM/KSC; ORDER ADOPTING NOVEMBER 20, 2009, FINDINGS AND RECOMMENDATION THAT DEFENDANT NOSHIR GOWADIA IS COMPETENT TO STAND TRIAL