IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NOSHIR S. GOWADIA, | ) | CRIM. NO. 05-00486 SOM |
| | ) | CIV. NO 14-00481 SOM/KSC |
| Petitioner, | ) | |
| | ) | ORDER DENYING MOTION TO |
| vs. | ) | VACATE, SET ASIDE, OR CORRECT |
| | ) | A SENTENCE BY A PERSON IN |
| UNITED STATES OF AMERICA, | ) | FEDERAL CUSTODY UNDER 28 |
| | ) | U.S.C. § 2255; ORDER DENYING |
| Respondent. | ) | CERTIFICATE OF APPEALABILITY |
| | ) | |

**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY UNDER 28 U.S.C. § 2255; ORDER DENYING CERTIFICATE OF APPEALABILITY**

I.        INTRODUCTION.

On August 9, 2010, after 41 days of trial and 6 days of jury deliberation, a jury convicted Noshir S. Gowadia of

> violations of the Arms Export Control Act of 1976 ["AECA"], the Espionage Act of 1917, and related provisions on charges that he unlawfully exported defense services and technical data related to the design of the B-2 stealth bomber and other classified government projects to the People's Republic of China, and that he disclosed related classified information to persons in Switzerland, Israel, and Germany.  See 22 U.S.C. § 2778; 18 U.S.C. §§ 793(e), 794(a).

United States v. Gowadia, 760 F.3d 989, 990 (9th Cir. 2014); Verdict, ECF No. 802 (convicting Gowadia of Counts 1, 2, 6, and 8 to 15, and 19 to 21); acquitting Gowadia of Counts 3, 4, 7).

On July 28, 2014, the Ninth Circuit Court of Appeals affirmed his conviction and 32-year sentence.  See id.

On September 26, 2014, Gowadia filed the present Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  See ECF No. 952-2.[1]  The court denies the motion and declines to issue a certificate of appealability.  The court denies the motion without a hearing because "the files and records of the case conclusively show that . . . [Gowadia] is entitled to no relief."  28 U.S.C. § 2255(b); see also Local Rule 7.2(d).

## II.        FACTUAL BACKGROUND.

On October 25, 2007, Gowadia was charged in a 21-count Second Superseding Indictment.  See ECF No. 133.  The Government later dismissed Counts 5, 16, 17, and 18 of the Second Superseding Indictment.  See ECF No. 529.

Count 1 asserted that Gowadia had conspired to knowingly and willfully export defense services and technical data, including classified information, to the People's Republic of China ("PRC"), without having a license or other written approval to do so, in violation of 18 U.S.C. § 371.  See ECF No. 133.  In relevant part, the Second Superseding Indictment alleged that Gowadia traveled to the PRC, sometimes without having his

---

[1]Page A21 of Gowadia's original motion was deemed to have contained classified information.  See ECF No. 952-1, PageID # 16299.  The original motion is being kept in a secured location and a redacted version of the motion has been placed in the public record as ECF No. 952-2.  Only five lines of the motion have been redacted.  The redacted material does not affect this court's analysis of the issues raised in the motion.

passport stamped, to help design, support, and test "a low observable exhaust nozzle, optimized for significant reduction in the infrared heat signature, for a PRC cruise missile." Id., PageID #s 801, 807-08.  Gowadia was alleged to have sent e-mails to an unindicted co-conspirator about the nozzle, and to have received approximately $110,000 for that assistance to the PRC. Id., PageID #s 801-02, 807-08.  The Second Superseding Indictment alleges that Gowadia gave oral presentations in the PRC, accompanied by PowerPoint presentations that included classified information relating to exhaust systems and low observable technologies, and that he received $15,000 for one of the presentations.  Id., PageID #s 803-04, 809.  Gowadia allegedly sent other e-mails to his unindicted co-conspirator containing classified information and sent bills to the PRC for $19,500 and $20,000.  See id., PageID # 806-808.  Gowadia also allegedly sent an e-mail to his unindicted co-conspirator that predicted the PRC cruise missile's infrared signature and lock-on range against a United States air-to-air missile.

Gowadia was convicted of Count 1 and sentenced to 5 years of imprisonment and 3 years of supervised release for Count 1, running concurrently with other terms of imprisonment and supervised release.  See ECF No. 839, PageID # 8676.

Count 2 asserted that Gowadia had violated the Arms Export Control Act by knowingly and willfully exporting defense

3

service and related technical data (information concerning the design, development, testing, and analysis of exhaust nozzles for PRC cruise missiles optimized for reduced infrared heat signatures), without having obtained a license or written approval to do so, to the PRC, in violation of 22 U.S.C. § 2778(c).  See ECF No. 133.  Gowadia was convicted of this count and sentenced to 20 years of imprisonment and 3 years of supervised release for Count 2, running concurrently with other terms of imprisonment and supervised release.  See ECF No. 839, PageID # 8676.

Counts 3, 4, 9, 10, and 11 asserted that Gowadia had communicated national defense information to persons not entitled to receive that information, in violation of 18 U.S.C. § 793(e). Counts 3 and 4 concerned an oral presentation and its accompanying PowerPoint presentation called "Advanced Exhaust Systems Aero DPB 31 Jul03.ppt," classified at the Secret level. Count 9 asserted that Gowadia had sent a fax to a government official in Switzerland concerning a proposal to develop infrared technology for the TH-98 Eurocopter that contained information about a United States defense system classified at the Top Secret level.  Counts 10 and 11 asserted that Gowadia sent e-mails to business people in Israel and Germany concerning a proposal to develop infrared technology for a foreign commercial aircraft that contained information about United States defense systems

classified at the Secret and Top Secret levels. See ECF No. 133. Gowadia was convicted of Counts 9, 10, and 11, but acquitted of Counts 3 and 4. See ECF No. 802. Gowadia was sentenced to 10 years of imprisonment and 3 years of supervised release for each of Counts 9, 10, and 11, running concurrently with other terms of imprisonment and supervised release. See ECF No. 839, PageID # 8676.

Counts 6, 7, and 8 asserted that Gowadia had communicated national defense information to aid a foreign nation, in violation of 18 U.S.C. § 794(a). Count 6 asserted that Gowadia had given an oral presentation to PRC agents and representatives, accompanied by a PowerPoint presentation identified as "studyresults.ppt," which concerned low observable technology for PRC cruise missiles, classified at the Secret level. Counts 7 and 8 asserted that Gowadia had sent e-mails to an unindicted co-conspirator who was a PRC agent, attaching files called "Analysis of the Shape on the Flow Field.ppt" and "Answers - 20 Mar 05.doc" that were classified at the Secret level. See ECF No. 133. Gowadia was convicted of Counts 6 and 8, but acquitted of Count 7. See ECF No. 802. He was sentenced to 32 years of imprisonment and 5 years of supervised release for each of Counts 6 and 8, running concurrently with other terms of imprisonment and supervised release. See ECF No. 839, PageID # 8676.

Counts 12, 13, and 14 asserted that Gowadia had violated the Arms Export Control Act, 22 U.S.C. § 2778(c). Count 12 asserted that Gowadia had sent a fax to a government official in Switzerland with a proposal to develop infrared reduction technology for the TH-98 Eurocopter, along with technical data and defense system information classified at the Top Secret level. Counts 13 and 14 asserted that Gowadia sent e-mails to business people in Israel and Germany concerning proposals to develop infrared technology for a foreign commercial aircraft that contained information about United States defense systems classified at the Secret and Top Secret levels. See ECF No. 133. Gowadia was convicted of these counts and sentenced to 20 years of imprisonment and 3 years of supervised release for each of Counts 12, 13, and 14, running concurrently with other terms of imprisonment and supervised release. See ECF No. 839, PageID # 8676.

Count 15 asserted that Gowadia had unlawfully retained national defense information, in violation of 18 U.S.C. § 793(e). See ECF No. 133. Gowadia was convicted of Count 15 and sentenced to 10 years of imprisonment and 3 years of supervised release for Counts 15, running concurrently with other terms of imprisonment and supervised release. See ECF No. 839, PageID # 8676.

Count 19 asserted that Gowadia had laundered the proceeds of the crime charged in Count 2, in violation of 18

U.S.C. § 1957.  <u>See</u> ECF No. 133.  Gowadia was convicted of Count 19 and sentenced to 10 years of imprisonment and 3 years of supervised release for Counts 19, running concurrently with other terms of imprisonment and supervised release.  <u>See</u> ECF No. 839, PageID # 8676.

Counts 20 and 21 asserted that Gowadia had filed false tax returns, in violation of 26 U.S.C. § 7206(1).  <u>See</u> ECF No. 133.  Gowadia was convicted of Counts 20 and 21 and sentenced to 3 years of imprisonment and 1 year of supervised release for each of Counts 20 and 21, running concurrently with other terms of imprisonment and supervised release.  <u>See</u> ECF No. 839, PageID # 8676.

**III.       ANALYSIS.**

A federal prisoner may move to vacate, set aside, or correct his or her sentence if it "was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."  28 U.S.C. § 2255.  There are some general rules regarding what kinds of claims can and cannot be raised in a § 2255 petition.

A § 2255 petitioner may not invoke § 2255 "to relitigate questions which were or should have been raised on a

direct appeal from the judgment of conviction." <u>United States v. Marchese</u>, 341 F.2d 782, 789 (9th Cir. 1965).  For example, a § 2255 petition cannot be based on a claim that has already been disposed of by the underlying criminal judgment and ensuing appeal.  As the Ninth Circuit stated in <u>Olney v. United States</u>, 433 F.2d 161, 162 (9th Cir. 1970), "Having raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255."

Similarly, a § 2255 petitioner is procedurally barred from raising an issue in a § 2255 petition if the issue could have been raised earlier, unless the § 2255 petitioner is actually innocent, <u>United States v. Guess</u>, 203 F.3d 1143, 1145 (9th Cir. 2000), or he or she can demonstrate both "cause" for the delay and "prejudice" resulting from the alleged error. <u>United States v. Frady</u>, 456 U.S. 152, 167-68 (1982).  As the Supreme Court stated in <u>Frady</u>, "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." <u>Id.</u>; <u>accord</u> <u>Davis v. United States</u>, 411 U.S. 233, 242 (1973).  To show "actual prejudice," a § 2255 petitioner "must shoulder the burden

of showing, not merely that the errors at [her] trial created a possibility of prejudice, but that they worked to [her] actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170.

Of course, ineffective assistance of counsel claims may be brought in a § 2255 proceeding, even if not asserted in a defendant's direct appeal. See Massaro v. United States, 538 U.S. 500, 504-05 (2003). In so ruling, the Supreme Court recognized that Frady's procedural bar should not apply in cases raising ineffective assistance of counsel claims in § 2255 motions because the record may not be properly developed to raise ineffective assistance of counsel claims on direct appeal. Id.

To establish ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). There is "a strong presumption" that counsel's conduct was reasonable and that counsel's representation did not fall below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. Even if a petitioner can overcome the presumption of effectiveness, the petitioner must still demonstrate a "reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction," judicial scrutiny of counsel's performance is highly deferential.  Id. at 689.

> ### A.   Gowadia Procedurally Defaulted on His Claim that the Warrant for the Search of His House Was Unsupported by Probable Cause (Grounds One and Sixteen).

In Ground One of his § 2255 motion, Gowadia contends that the search of his house violated the Fourth Amendment because the warrant for that search was not supported by probable cause.  See ECF No. 952-2, PageID # 16334-35.  Ground Sixteen generally asserts that the use of false evidence was unconstitutional.  Id., PageID # 16359.

In particular, Gowadia says that FBI Special Agent Thatcher Mohajerin's affidavit supporting the warrant application contained false statements.  Gowadia claims that, on page 17 of the affidavit, Mohajerin identifies 5 documents as having been classified at the Secret level when they were unclassified. Gowadia claims that, although the affidavit stated that Mel Zerden said that those documents required an export license, Zerden never saw the documents and no license was needed. Gowadia also says that the affidavit discusses a Top Secret

program that should have been unclassified.  Id., PageID # 16334-35.  Because Gowadia did not challenge the probable cause supporting the warrant with this court or with the Ninth Circuit, he procedurally defaulted on it.  Gowadia does not show Frady's cause and prejudice such that his failure to raise the issue is excused.

At most, Gowadia attempts to say that his attorneys were ineffective in failing to raise the issue of false statements after they were given the information.  See ECF No. 952-2, PageId # 16357.  But this contention is insufficient to show that 1) his attorneys' performances were deficient, and (2) the deficient performances prejudiced his defense. Strickland, 466 U.S. at 687.

Gowadia does not demonstrate that his attorneys' performances were deficient.  In the Joint Declaration of David F. Klein and Birney B. Bervar, Gowadia's attorneys state that they did not ignore Gowadia's concerns regarding the search warrant.  To the contrary, the attorneys say that they reviewed all of the evidence and determined that there was no basis to support filing a motion to suppress.  See ECF No. 972-4, PageID #s 16583-84.

11

Nor does Gowadia demonstrate that the failure to raise the issue prejudiced him.  As Gowadia's counsel concluded, ample evidence supported the determination that probable cause supported the issuance of the warrant.  When reviewing the issuance of a search warrant, courts defer to a judge's determination of probable cause, upholding it when the issuing judge had a substantial basis for concluding that, based on the totality of the circumstances, probable cause existed.  See Ewing v. City of Stockton, 588 F.3d 1218, 1223 (9th Cir. 2009).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

Illinois v. Gates, 426 U.S. 213, 238-39 (1983) (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

While pointing to alleged falsehoods in certain representations in the declaration Mohajerin submitted in support of the warrant application, Gowadia does not allege, much less show, that Mohajerin intended to deceive the court.  "'Omissions or misstatements resulting from negligence or good faith mistakes

will not invalidate an affidavit which on its face establishes probable cause.'" Ewing, 588 F.3d at 1224 (quoting United States v. Smith, 588 F.2d 737, 740 (9th Cir. 1978)). Even if an agent had deliberately or recklessly made false statements in his affidavit, a reviewing court would have to determine whether those statements were material. In other words, a reviewing court would need to examine whether the affidavit still demonstrated probable cause when the improper statements were purged from the affidavit. See Ewing, 588 F.3d at 1224.

United States District Judge Helen Gillmor issued the warrant for the search of Gowadia's house on October 13, 2005, based on Mohajerin's declaration. See Misc. No. 05-00833 HG. That declaration was single-spaced and 26-pages long. See ECF No. 972-3, PageID #s 16553-78. Even if the court disregards the statements Gowadia complains about, there is still ample support for the probable cause determination.

The affidavit indicates that Gowadia worked on the B-2 bomber project while at Northrop Grumman Corporation. See ECF No. 972-3, PageID # 16560. It indicates that Gowadia wrote e-mails stating that he was working with foreign corporations and governments on commercial applications of defense technologies. Id., PageID # 16562. According to the affidavit, Gowadia

13

entered/exited the United states 16 times between 1992 and 2001. Id.  It further states that Gowadia received substantial wire transfers of money originating in Switzerland and Australia (more than $250,000 in 2002).  Id., PageID # 16563.  It notes that Gowadia lives in a multi-million dollar residence.  Id.

According to Mohajerin's affidavit, a container shipment from Singapore to Honolulu listed Gowadia as the sender and recipient.  Pursuant to a policy of the Department of Homeland Security, Customs and Border Protection Agency, the container was inspected.  An x-ray of the container indicated that it contained an 18-inch stack of papers.  The FBI reviewed the papers, which pertained to the B-2 bomber and discussed infrared technology used to neutralize missiles.  There were also proposals to create and implement anti-missile technology for Israel, Australia, and Singapore.  Id., PageID # 16564. Mohajerin was informed by an Air Force officer that the material contained Secret or Top Secret information.  Id.  In 2004, the Department of State Directorate of Defense Trade Controls Compliance determined that 10 of the documents were subject to the Arms Export Control Act and ITAR and that a license was required to export them.  Id., PageID # 16571.

14

In April 2004, Gowadia was scheduled to travel to Hong Kong and Singapore.  Gowadia was searched at the airport pursuant to the Government's border search authority.  In his carry-on bag, Gowadia had computer presentations regarding infrared technology.  While Gowadia contends that this information was unclassified, Mohajerin stated that he was told that the material should be classified at the Secret level.  See id., PageID # 16565.  When Gowadia returned from his trip, he was again searched and his laptop "mirrored."  Mohajerin was told that the information on the laptop included Top Secret, Secret, and Confidential information.  Id., PageID #s 16566-68.  The Government discovered that Gowadia had been sending e-mails to individuals in foreign countries that violated the Arms Export Control Act.  These e-mails refer to codes used by NASA and to the B-2 and F-5E designs.  Id., PageID # 16569.

In an August 2004 e-mail to Angelo Comotti, the head of an Italian company, Gowadia mentioned that he had some information regarding advanced infrared suppressors.  Id., PageID # 16570.

In 2005, the FBI received copies of Gowadia's e-mails soliciting business and offering his company's services in infrared suppressors to people in Germany, France, England,

15

Australia, Singapore, Italy, Arabia, and Africa.  Id., PageID # 16572.  In two of the e-mails, Gowadia attached a document with the title "Protection of C-130H Aircraft Against Heat Seeking Missiles (AIRSS)," which contained Secret/Special Access Required material.  Id.

Because Gowadia conducted his business from his home, Mohajerin believed that evidence of a criminal long-term, systematic effort to market and sell defense technologies would be located in the home.  Id., PageID #s 16576-77.

Under the totality of the circumstances, even if the court purges the statements that Gowadia complains of, ample evidence supports Judge Gillmor's determination that there was probable cause to believe that evidence of crimes concerning classified information would be found in Gowadia's home. Accordingly, Gowadia fails to show he was prejudiced by the allegedly false statements in Mohajerin's affidavit.

### B.   Gowadia May Not Raise the Denial of Bail in the Present § 2255 Motion (Ground Three).

In his third ground for relief, Gowadia argues that he was wrongfully denied pretrial bail.  ECF No. 952-2, PageID #s 16337-38.  But "the denial of bail, which does not affect either his conviction or sentence, is not ordinarily a cognizable issue in a § 2255 motion."  United States v. Prado, 2011 WL

2224832, *6 (E.D. Cal. June 7, 2011).  Accord Lucas v. United States, 2015 WL 4041644, *14 (W.D. Tenn. July 1, 2015) ("A challenge to a denial of bail cannot be litigated in a § 2255 motion because it does not affect the validity of the criminal judgment."); see also Kett v. United States, 722 F.2d 687, 690 (11th Cir. 1984) ("claims of excessive bail are not cognizable in a section 2255 action").  This is because, under § 2255, a federal prisoner may move to vacate, set aside, or correct his or her sentence if it "was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."  28 U.S.C. § 2255.  The denial of bail to Gowadia did not affect his conviction or his sentence.

**C.   Gowadia May Not Relitigate Arguments Rejected by This Court or the Jury That He Failed to Ask the Ninth Circuit to Review.**

**1.   Gowadia May Not Relitigate His Argument That Certain Information About the B-2 Bomber Was Not Classified (Grounds Two, Four, and Sixteen).**

Gowadia claims that he was subject to a fraudulent indictment and false arrest because he was charged in Counts 6 to 11 of the Second Superseding Indictment with having provided

17

classified information about the B-2 bomber to other governments

(Switzerland, Israel, and Germany), when that information could

not possibly have been classified.  See ECF No. 952-2, PageID

#s 16336.  Ground Sixteen asserts that false evidence was

unconstitutionally used against him.  Id., PageID # 16359.

Gowadia made the same argument in his motion to dismiss

of April 5, 2006.  In that motion, Gowadia contended that the

information he allegedly gave to other governments was developed

through in-flight tests of the B-2 bomber three years after

Gowadia left the program.  Accordingly, Gowadia argued that he

did not have access to the data such that he could have given it

to other governments and that the information he allegedly

provided to the other governments was, at most, an educated

guess.  See ECF No. 42-2, PageID #s 153, 155, 159, 165, and 167-

68.  On August 28, 2006, the court denied the motion to dismiss,

rejecting the argument that Gowadia could not possibly have

provided classified information to other governments.  See ECF

No. 80.

At trial, Gowadia similarly testified that he did not

have access to the "radar cross-section signature or IR

signature" of the B-2 bomber, because the bomber had not been

actually built when he was working for Northrup Grumman

18

Corporation.  See Transcript of Proceeding of June 30, 2010, ECF No. 898-1, PageID #s 14326-27; Transcript of Proceeding of June 31, 2010, ECF No. 899, PageID # 12506, 12562.  Gowadia also testified that, although the Air Force B-2 classification guide said the information was classified, he had not thought it was classified.  Gowadia testified that the design of the B-2 bomber made the infrared signature meaningless.  See Transcript of Proceedings of June 30, 2010, ECF No. 898-1, PageID #s 12343, 14173-4.  The jury necessarily rejected his contentions when it convicted him.

In his § 2255 motion, Gowadia argues that "propulsion IR and its effect (Lock-On Range) were not considered in design and their information did not exist in the program."  ECF No. 952-2, PageID # 16337.  Gowadia testified to the same thing at trial.  See Transcript of Proceedings of June 31, 2010, ECF No. 899, PageID # 12543 ("Q  And as far as from your -- from your working on the B-2, was lock-on a criteria for the B-2? A  No, sir, it doesn't make sense for B-2.  Never considered -- I never considered that into my design."), 12562 ("Q  Okay. And as far as your understanding as far as how the B-2 is designed, was it designed for detection or for lock-on?  A  Strictly for detection.  Q  Was lock-on a consideration on the B-2?  A  Never

was."), and 12565 (Gowadia testifying that, because he did not have access to certain data for the B-2 bomber, he made guesses as to its lock-on range and made up figures in an attempt to market himself); ECF No. 898-1, PageID # 14174 (stating that the lock on range is classified if the Air Force classifies the data, but opining that the lock-on range is meaningless); Transcript of Proceedings of July 20, 2010, ECF No. 906, PageID # 13114 ("B-2's lock-on range is identified as unclassified in the original classification guide, and best to my knowledge, the way I read today's guide, it still is unclassified.").

The jury necessarily rejected Gowadia's contentions when it convicted him.  Gowadia may not relitigate the same arguments in the present § 2255 motion.  <u>Marchese</u>, 341 F.2d at 789; <u>Olney</u>, 433 F.2d at 162.

Gowadia argues that his attorneys were ineffective because "[t]hey were shown why B-2 Counts were false hence arrest was illegal; it was ignored."  ECF No. 952-2, PageID # 16358.  Gowadia's attorneys respond that, "at no time did we ignore Mr. Gowadia.  We always considered what he informed us, and acted ethically in accordance with the standards of professional responsibility."  ECF No. 972-4, PageID # 16584.  The factual issues Gowadia presents here were placed before the jury but

20

resolved against him by the jury.  Gowadia neither identifies

specific deficiencies in what his attorneys did nor shows a

reasonable probability that, but for their alleged errors, the

result of the proceeding would have been different.  Strickland,

466 U.S. at 694.

>           **2.   Gowadia May Not Relitigate His Argument That Nozzles of Cruise Missiles Need Not Have Reduced Heat Signatures (Grounds Five and Sixteen).**

In Ground Five of the § 2255 motion, Gowadia claims to

have been the subject of a fraudulent indictment and prosecution

because the Second Superseding Indictment asserts in Counts 1 and

2 that Gowadia designed for the PRC a rectangular nozzle that

greatly reduced heat signatures for cruise missiles.  Gowadia

says that a square nozzle is not needed nor used because the heat

signature of a cruise missile is too small to need it.  See ECF

No. 952-2, PageID # 16340.  Ground Sixteen asserts that the use

of false evidence was unconstitutional.  Id., PageID # 16359.

This is the same argument Gowadia made at trial.

On July 2, 2010, Gowadia testified that infrared or

"IR" suppressors are not important for cruise missiles because

their engines are small and they fly at low altitudes.  Gowadia

testified that, as a result, "all of our cruise missiles have

round nozzles."  See ECF No. 900, PageID # 12665-66.  Colonel

Roger Vincent testified to the contrary.  He testified that he was a combat pilot who flew an F-15.  He said that he received training to address cruise missile threats.  See ECF No. 909, PageID #s 13693-94.  Col. Vincent testified that he was trained to use an AIM-9 missile against cruise missiles.  Id., PageID #s 13640, 13695.  Col. Vincent explained that the Aim-9 missle is "IR-guided," meaning that it looks for a heat source to lock onto.  Id., PageID # 13643.

In convicting Gowadia, the jury must have rejected his factual argument concerning the heat signatures of cruise missiles.  Gowadia may not relitigate that factual argument in this § 2255 motion.  Marchese, 341 F.2d at 789; Olney, 433 F.2d at 162.  To the extent Gowadia is claiming ineffective assistance of counsel with respect to his attorneys' failure to win the day with respect to the heat signatures of cruise missiles, Gowadia cannot show the prejudice necessary to demonstrate ineffective assistance of counsel--he cannot show a reasonable probability that, but for alleged attorney deficiencies, the result of the proceeding would have been different.  Strickland, 466 U.S. at 694.

3.   **Gowadia May Not Relitigate His Argument That the Information He Gave the PRC Concerning the Nozzles of Cruise Missiles Was Not Classified (Grounds Six and Sixteen).**

Counts 6 and 8 of the Second Superseding Indictment assert that Gowadia violated 18 U.S.C. § 794(a) by providing classified information to the PRC concerning exhaust nozzles.  In ground six of Gowadia's § 2255 motion, Gowadia argues that he could not have violated § 794(a) because the information he gave the PRC was not "owned by" the United States.  Gowadia contends that the information fails to meet the requirements for classification by an Executive Order.  See ECF No. 952-2, PageID # 16341.  Gowadia appears to be referring to section 1.1 of Executive Order 12958 of April 17, 1995, which, in relevant part, was modified by Executive Order 13292 of March 25, 2003.  See Transcript of Proceeding of July 14, 2010, ECF No. 905, PageID 12973 (referring to Executive Order 12958).  The 1995 Executive Order defines "Information" as "any knowledge that can be communicated or documentary material, regardless of its physical form or characteristics, that is owned by, produced by or for, or is under the control of the United States Government."  The 2003 Executive Order states that information may be originally classified when it meets certain criteria, such as if "the information is owned by, produced by or for, or is under the

23

control of the United States Government" and "the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security.  See Executive Order 13292.

Gowadia contends in Ground Six of his § 2255 motion that the information he provided to the PRC concerning exhaust nozzles was not owned by the United States because he made it up after being "read out" of the classified programs he had previously been involved with (or "read into").  Gowadia also contends that the disclosure of the information could not have damaged national security because it was based on a student's class project and because there is no such thing as a rectangular nozzle that reduces the heat signatures of cruise missiles.  See ECF No. 952-2, PageID #s 16341-42.

Ground Sixteen of the § 2255 motion asserts that the use of false evidence as described in Grounds Six and Eight was unconstitutional.  Id., PageID # 16359.

Gowadia raised these issues at trial, as he testified on July 14, 2010, that information he gave the PRC did not meet the requirements of section 1.1 of the 1995 Executive Order, including the "mandatory requirement 4 of Section 1.1."  This testimony appears to have sought to establish that disclosure of

the information did not damage national security.  Id., PageId # 12960.  He also testified about work for a "Ph.D. student's thesis" and discussed writing a textbook using charts from Purdue students, stating that, pursuant to the Executive Order, that information was declassified.  Id., PageID #s 12929, 12957-58. Gowadia also argued that the information he transmitted had been in open literature and had not been paid for by the United States Government such that it could be owned by the United States Government.  See Transcript of Proceedings of July 20, 2010, ECF No. 906, PageID # 13112-13; see also Transcript of Proceedings of July 23, 2010, ECF No. 907, PageID # 13307 (stating that basic physics cannot be classified under the Executive Order), PageID # 13310-11 ("Read the executive order, and you will find that there is no crime.  The things you have classified are prohibited from classification."), and PageID # 13320 (stating, with respect to Count 6, "That data is not classified, and even if that data was classified, that document cannot be classified because the executive order says it cannot be classified.").

As described above, Gowadia also testified that reducing the heat signature of cruise missiles was irrelevant given the small size of their engines and the low altitudes at which they flew.  As a result, he claimed, "all of our cruise

missiles have round nozzles." <u>See</u> ECF No. 900, PageID # 12665-66.

Having failed to persuade the jury, Gowadia may not relitigate those issues in this § 2255 motion. <u>Marchese</u>, 341 F.2d at 789; <u>Olney</u>, 433 F.2d at 162. Additionally, because Gowadia did not raise these issues on appeal, he is procedurally barred from doing so now in the absence of a showing of the cause and prejudice required by <u>Frady</u>. <u>See</u> <u>Frady</u>, 456 U.S. 167-68. Nor does Gowadia demonstrate that his attorneys were ineffective in failing to raise these matters on appeal, as Gowadia makes no showing of a reasonable probability that, but for the alleged errors, the result of the proceedings would have been different. <u>Strickland</u>, 466 U.S. at 694.

**4.    Gowadia May Not Relitigate His Argument That Information Concerning Commercial Aircraft Never Involves Classified Information (Grounds Seven and Sixteen).**

The Second Superseding Indictment charges Gowadia with having violated 18 U.S.C. § 793(e). In Ground Seven, Gowadia argues that, under section 1.4 of Executive Order 13292, information concerning commercial aircraft can never be classified. That section states:

> Information shall not be considered for classification unless it concerns:

(a) military plans, weapons systems, or
operations;
(b) foreign government information;
(c) intelligence activities (including
special activities), intelligence sources or
methods, or cryptology;
(d) foreign relations or foreign activities
of the United States, including confidential
sources;
(e) scientific, technological, or economic
matters relating to the national security,
which includes defense against transnational
terrorism;
(f) United States Government programs for
safeguarding nuclear materials or facilities;
(g) vulnerabilities or capabilities of
systems, installations, infrastructures,
projects, plans, or protection services
relating to the national security, which
includes defense against transnational
terrorism; or
(h) weapons of mass destruction.

In Ground Sixteen, Gowadia asserts that false evidence

was unconstitutionally used.  Id., PageID # 16359.

Gowadia made his Ground Seven argument at trial.  On

July 20, 2010, Gowadia testified that because commercial

airplanes are not "military plans, weapon systems, or

operations," information relating to commercial airplanes should

not be classified.  See ECF No. 906, PageID # 13145.  The jury

did not view this as a viable defense, and Gowadia may not seek

to overcome the jury's factual determination in this § 2255

motion.  Marchese, 341 F.2d at 789; Olney, 433 F.2d at 162.  The

information Gowadia provided to another government may have had

27

potential application to commercial airplanes, but that does not necessarily mean that that information must not have been classified.  Additionally, because Gowadia did not raise the issue on appeal, he is procedurally barred from doing so now, given his failure to demonstrate cause and prejudice justifying that failure.  See Frady, 456 U.S. 167-68.  And, once again, even if Gowadia had not procedurally defaulted on these arguments, he does not demonstrate that his attorneys were ineffective in failing to raise the issue on appeal.  He does not demonstrate a reasonable probability that, but for alleged errors by his attorneys, the result of the proceedings would have been different.  Strickland, 466 U.S. at 694.

> **5.**   **Gowadia May Not Relitigate His Argument That He Should Have Been Allowed to Challenge the Classification Determinations by the Executive Branch (Ground Ten).**

In Ground Ten, Gowadia argues that he should have been allowed to challenge the security classification at trial. Gowadia may not relitigate this issue in this § 2255 motion.

On March 6, 2009, the Government filed a Memorandum of Law Concerning Judicial Review of and Defense Challenges to Determinations by the Executive Branch That Information Is Classified.  See ECF No. 303.  That memorandum argued "neither judicial review of nor defense challenges to classification

28

decisions by executive branch officials is permitted." Id., PageID # 2698.

On March 10, 2009, Gowadia filed a Response to Government's Memorandum of Law Concerning Judicial Review of and Defense Challenges to Determinations by the Executive Branch That Information Is Classified. See ECF No. 308. Gowadia argued that he should be permitted to challenge the classification of material "whether at the Section 6(c) hearing or at the trial of this case." Id., PageID # 2748.

On March 20, 2009, District Judge Helen Gillmor ruled via a Minute Order that Gowadia was not allowed to challenge classification decisions by the executive branch or argue at trial that information should not have been classified, but was allowed to rebut the elements of a crime, including arguing that the information he disclosed was not "information relating to the national defense." See ECF No. 320, PageID #s 2790-91.

On appeal to the Ninth Circuit, Gowadia argued that this court should not have prohibited him from challenging the classification of information at trial based on the Government's memorandum of March 6, 2009. See No. 11-10058, DckEntry 74-1, ID 8478886, Pages 108 of 146 to 120 of 146 (identified as Argument B in the Opening Brief, corresponding to page numbers 95

29

to 107 of the Opening Brief).  On February 17, 2014, Gowadia withdrew that argument.  See No. 11-10058, DckEntry 117, ID 84780300 ("Appellant Noshir Gowadia hereby withdraws from consideration Argument 'B' in the opening brief at pages 95 to 107.").

Having unsuccessfully raised this issue before this court, Gowadia may not relitigate it now.  See Marchese, 341 F.2d at 789; Olney, 433 F.2d at 162.  Additionally, because Gowadia chose not to pursue the issue before the Ninth Circuit, he is procedurally barred from raising the issue in this § 2255 motion. See Frady, 456 U.S. 167-68.  He shows neither cause nor prejudice arising from the withdrawal of the issue before the Ninth Circuit, nor that his attorneys were ineffective in withdrawing the issue.

> **6.  Gowadia May Not Relitigate His Argument That His Confession Was Obtained by Threats (Ground Eleven).**

In Ground Eleven of his § 2255 motion, Gowadia argues that his confession was obtained through threats that he would face the death penalty and that his wife and children would be arrested.  Gowadia made this same argument in his motion to suppress of November 13, 2008.  See ECF No. 218.  In that motion, Gowadia argued that suppression was appropriate because his

"statements were obtained as a product of threats, coercion, and
unreasonable delay between his arrest and initial appearance, and
thus the statements were involuntary and in violation of due
process as provided by the Fifth Amendment to the United States
Constitution."  Id., PageID # 1198.  Gowadia contended that, to
get him to confess, agents "told Gowadia that if he did not
cooperate they would arrest his wife, his adult son, and his
adult daughter.  One of the agents then laughed and stated that
of course his wife and kids would be found innocent in a year or
two, 'but in the meantime, their lives will be destroyed.'"  Id.,
PageID # 1201-02.  The agents later allegedly told Gowadia that
"they would seek the death penalty for him and arrest his wife
and kids if he did not continue" confessing.  Id., PageID # 1202-
03.  Agents allegedly told him several more times that his wife
and children would be arrested for having been Gowadia's co-
conspirators.  Id., PageID # 1203-04.

After holding hearings on Gowadia's motion to suppress
over six days, the court denied the motion in a written order.
See ECF Nos. 256-258, 260-61, 264 (minutes of motion to supress),
and ECF No. 376 (order denying motion).  In relevant part,
District Judge Helen Gillmor said she did not believe Gowadia,
ruling that Gowadia's statements "were made voluntarily and were

not the product of psychological or physical coercion." <u>See</u> ECF No. 376, PageID # 2993.  Judge Gillmor noted that "Agents Mohajerin and Williams both testified that the issue of arrest was never broached during any of the interviews, either by the Agents or by Defendant."  <u>Id.</u>, PageID # 3013.  They testified that neither Gowadia nor his family

> were ever threatened in any manner, directly or indirectly, by themselves or by another party.  More specifically, the Agents testified that neither the issue of arrest nor the issue of the death penalty was ever discussed with Defendant.  Agent Mohajerin stated that the issue of the death penalty never crossed his mind, and that neither word, "death" nor "penalty", was ever used by any Agent during the interviews with Defendant.

<u>Id.</u>, PageID # 3018.  Given that testimony, Judge Gillmor determined "that there is no credible evidence of a direct or indirect threat being made against either the Defendant or his family members by any Agent during the interviews that occurred between Thursday, October 13, 2005, and Tuesday, October 25, 2005."  <u>Id.</u>, PageID # 3019.

At trial, Gowadia reiterated that he confessed because he "was threatened, my family was threatened, I was tired, I was confused, and I didn't want the hassle.  So I told them things which are not completely correct, but like I said, there was no

crime, there is no crime today, and all the words in the world are meaningless." Transcript of Proceedings of July 23, 2010, ECF No. 907, PageID # 13310.

Gowadia did not appeal the denial of his motion to suppress to the Ninth Circuit. Accordingly, having raised the matter unsuccessfully with this court, he may not relitigate it now. See Marchese, 341 F.2d at 789; Olney, 433 F.2d at 162. Additionally, because Gowadia did not pursue the issue before the Ninth Circuit, he is procedurally barred from raising the issue in this § 2255 motion. See Frady, 456 U.S. 167-68. As with other issues, he shows neither cause nor prejudice for his failure to raise the issue with the Ninth Circuit. Nor does he demonstrate that his attorneys were ineffective in failing to pursue the issue on appeal. Strickland, 466 U.S. at 694.

### D. Gowadia Procedurally Defaulted on Issues He Did Not Appeal to the Ninth Circuit.

#### 1. Gowadia is Procedurally Barred From Arguing That the Evidence Did Not Support the Filing of False Tax Return Charges Asserted in Counts 20 and 21 of the Second Superseding Indictment (Grounds Eight and Sixteen).

Grounds Eight and Sixteen challenge Gowadia's convictions for the filing of false tax returns, as charged in Counts 20 and 21. Because Gowadia was sentenced to three years for those convictions, and because Gowadia has already served

more than three years, Gowadia's challenge to those convictions cannot affect the length of his incarceration, but can affect the fact of conviction and the terms of supervised release for those convictions.

Counts 20 and 21 of the Second Superseding Indictment assert that Gowadia filed false tax returns for 2001 and 2002. In Ground Eight of his § 2255 motion, Gowadia argues that the income he did not report was the "same as the business expenses the IRS agents had left out from the calculation." ECF No. 952-2, PageID # 16345. Ground Sixteen asserts that use of false evidence is unconstitutional. Id., PageID # 16359. This bald argument regarding business expenses lacks further explanation or evidence.

Because Gowadia failed to raise this argument on appeal, he is procedurally barred from raising it in this § 2255 motion. Frady, 456 U.S. at 167-68; Guess, 203 F.3d at 1145. Gowadia makes no attempt to demonstrate cause or prejudice justifying his failure. Even if the court assumes that Gowadia is claiming that his appellate attorneys were ineffective in failing to raise the issue with the Ninth Circuit, Gowadia's simple reference to the issue without further discussion does not amount to the required showing of prejudice.

Gowadia does not show a reasonable probability that,
but for his attorneys' allegedly deficient performance, the
result would have been different.  At trial, the evidence
established that Gowadia had under-reported his income for 2001
and 2002 on his tax returns.  Susan Mitsuyoshi of the Internal
Revenue Service testified on June 9, 2010, that for 2001 Gowadia
had reported a tax liability of zero when he should have paid
$41,400 on $166,908 of income.  See Transcript of Proceedings of
June 9, 2010, ECF No. 916, PageID # 14789 (taxable income for
2001 was $166,908) and # 14791 (paid no tax when he should have
paid $41,400 for 2001).  Mitsuyoshi further testified that, with
respect to 2002, Gowadia paid $6,455 in tax on a reported income
of $17,444, but should have paid $54,333 on a much greater
income.  See id., PageID #s 14789-91.

Gowadia's conviction of Counts 20 and 21 indicates that
the jury believed that he had under-reported his income for 2001
and 2002.  He does not show prejudice by simply saying, without
explanation or proof, that the alleged unreported income should
not have been considered income.  Strickland, 466 U.S. at 694.

At most, Gowadia says that his counsel did not use
"accounting information" from a District of Columbia case.  See
ECF No. 952-2, PageID # 16358.  Other than pointing to the

35

existence of the information, Gowadia does not show that it would have been relevant or helpful to him.  In his reply in support of his § 2255 motion, Gowadia attaches what he says is the accounting information.  See ECF No. 983-3, PageID # 16793-94. But that information appears to be written in Gowadia's handwriting and is nothing more than his disagreement with Mitsuyoshi's testimony.  It demonstrates neither that his counsel's supposed failure to consider and use that information fell outside the wide range of professional competence nor that the result of the proceeding would likely have been different if counsel had used the information.  Strickland, 466 U.S. at 694.

> 2.   **Gowadia is Procedurally Barred From Arguing That He Did Not Receive Discovery Concerning His Own E-mails That Would Have Shown That the Purpose of His Trip to the PRC Was to Market Drag Reduction of Supertankers (Ground Twelve).**

In Ground Twelve of his § 2255 motion, Gowadia claims that his "trip to the PRC was to market the drag reduction of super tankers and for propulsion of ferries."  ECF No. 952-2, PageID # 16350.  Gowadia says that he received in discovery only two of his own e-mails for 2002.  Id.  He says that, had the Government provided more of the e-mails he had sent to others, those e-mails would have prevented the Government from "converting" the purpose of his trip.  Id.  Because Gowadia did

36

not make this argument to the Ninth Circuit, he procedurally defaulted on it absent showing cause and prejudice.  See Frady, 456 U.S. at 167-68; Guess, 203 F.3d at 1145.

Gowadia fails to show prejudice that would excuse his procedural default.  Gowadia's own testimony undercuts Ground Twelve of his § 2255 motion, as he himself testified that his trips to the PRC were not for the purpose of marketing his "ship drag" reduction with respect to large ships.  See Transcript of Proceeding of July 23, 2010, ECF No. 907, PageID #s 13273-76 (Gowadia testifying that he was not actually working on ship drag in the PRC and only said that he was to avoid being hassled) and 13339-40 (same).

Gowadia also appears to be arguing that the Government's request to e-mail providers should have been much broader, rather than narrowly tailored to seek selected information.  Gowadia says that, had the requests been broader, the Government would have had other e-mails that would have mentioned words such as "students" and "university," and those other e-mails would have supported his claim that certain information was not classified.  Because Gowadia did not make this argument on appeal, he procedurally defaulted on it. Gowadia cannot show that the Government's narrowly tailored

requests prejudiced Gowadia.  Certainly he knew about the
existence of the other e-mails such that he could have had his
attorneys seek to obtain them for use at trial.  See Frady, 456
U.S. at 167-68; Guess, 203 F.3d at 1145.  His broad assertion
that his attorneys "were given all the above information" but
failed to act appropriately is notably lacking in specific
reference to particular e-mails, or in discussion as to the
likelihood of a different result had particular e-mails been
obtained.

> **3.    Gowadia is Procedurally Barred From Arguing
> That His Communications Were Intercepted or
> That Witnesses Were Threatened and
> Intimidated (Ground Thirteen).**

In Ground Thirteen of his § 2255 motion, Gowadia claims
that the Government was improperly monitoring and interfering
with his mail and that witnesses were threatened and intimidated
in what he describes as an abuse of power.  Gowadia says that a
letter he mailed on October 18, 2007, was not received until
January 7, 2008, and that a witness at trial "was wearing a
black, woolen coat buttoned up to her neck."  See ECF No. 952-2,
PageID #s 16351-52.  Because Gowadia did not raise these issues
at trial or on appeal, he procedurally defaulted on the issues.
Gowadia does not show the cause and prejudice necessary to
justify that default, as he simply raises the issues with almost

no factual detail.  See Frady, 456 U.S. at 167-68; Guess, 203 F.3d at 1145.

> **4.  Gowadia is Procedurally Barred From Arguing That His Convictions Were Based on False Evidence (Grounds Fourteen and Sixteen).**

In Ground Fourteen of his § 2255 motion, Gowadia argues that the Government introduced false evidence concerning his access to information about the B-2 bomber program.  Ground Sixteen generally asserts that use of false evidence is unconstitutional.  Gowadia says that the Government introduced evidence regarding a B-2 access form signed on June 30, 1984. Gowadia says that he never signed a B-2 access form, and that the document he signed on June 30, 1984, therefore could not have been a B-2 access form.  See ECF No. 952-2, PageID # 16353. Gowadia is correct that the document signed on June 30, 1984, was not a B-2 access form.  In fact, Scott Betten Conway testified on April 13, 2010, that the document signed on June 30, 1984, was a debriefing document that Gowadia signed when he left Northrop Grumman Corporation.  See ECF No. 856, PageID #s 9405-07.

However, even if Gowadia had not misread the trial testimony, his argument that his conviction was based on false evidence would be procedurally barred, as he failed to raise the issue on appeal and does not show that he was prejudiced by the

evidence.   There is no dispute that Gowadia worked on the B-2 bomber program.   See Frady, 456 U.S. at 167-68; Guess, 203 F.3d at 1145.

Gowadia next argues that he was convicted based on false evidence provided by Joseph Williams, a special agent or a criminal investigator for the United States Air Force, Office of Special Investigations, and by Colonel Roger Vincent of the United States Air Force.   Gowadia says that, because Gowadia is one of the "best in the world," Gowadia knows better than Williams or Vincent whether material is classified.   ECF No. 952-2, PageID #s 16354-55.   Gowadia in effect attacks the Government's trial evidence with his own statements.   This particular attack was not one made by Gowadia on appeal.   Gowadia is therefore procedurally barred from making this argument now given his failure to show cause and prejudice relating to the introduction of the evidence at trial.   Gowadia clearly disagrees with the trial evidence, but that is insufficient to show the necessary cause and prejudice to excuse his procedural default. See Frady, 456 U.S. at 167-68; Guess, 203 F.3d at 1145.

### E.   Gowadia Does Not Show Ineffective Assistance of Counsel.

Many of Gowadia's ineffective assistance of counsel claims have been addressed in other parts of this order: 1) house

search violated Fourth Amendment (Ground One); 2) B-2 counts were

based on false evidence (Grounds Two, Four, and Fourteen); 3) PRC

counts based on false evidence (Grounds Six and Twelve);

4) cruise missiles do not need IR reducing nozzle (Ground Five);

and 5) accountant information not used (Ground Eight).

Gowadia has a host of other complaints: 6) he asked

counsel to have "Mr. Waaland" testify; 7) his attorneys asked

Gowadia not to take notes and/or distract them during trial;

8) the Speedy Trial Act was violated; and 9) counsel did not

argue that Gowadia was entitled to a "jury of his peers"

consisting of people with "familiarity of the subjects." Gowadia

throws these complaints out without showing that his attorneys

acted outside the wide range of professional conduct or that, but

for their conduct, the result of the proceeding would likely have

been different. See Strickland, 466 U.S. at 694.

Gowadia does not explain what "Mr. Waaland" could have

testified to, what helpful notes Gowadia might have taken during

trial, or what useful comments he might have made to counsel but

for instructions not to be distracting. As for his Speedy Trial

Act concerns, much of the delay flowed from his switching of

counsel, the need for a mental competency examination, the filing

of numerous motions, and the time needed to determine how to

present classified information at trial.  Given these matters,

the Speedy Trial Act was not violated.  Finally, Gowadia had no

right to have a jury of persons familiar with classified or

technical subjects.  Gowadia was tried by an impartial jury drawn

from a representative cross-section of the community.  See

Berghuis v. Smith, 595 U.S. 314, 319 (2010) ("The Sixth Amendment

secures to criminal defendants the right to be tried by an

impartial jury drawn from sources reflecting a fair cross section

of the community."); United States v. Hernandez-Estrada, 749 F.3d

1154, 1157 (9th Cir. 2014) (same).  Gowadia was "not entitled to

a jury of any particular composition."  See Taylor v. Louisiana,

419 U.S. 522, 538 (1975).

> **F.    Because Gowadia Fails to Show He Was Improperly
>         Convicted of the Export Crime Charged in Count 2,
>         and Because His Challenge to the Money Laundering
>         Count Relies on the Invalidity of the Export
>         Conviction, He is Unpersuasive in Arguing that He
>         Should Not Have Been Convicted of Money Laundering
>         (Ground Nine).**

Count 19 of the Second Superseding Indictment asserted

that Gowadia violated 18 U.S.C. § 1957 by laundering the proceeds

of the export crime asserted in Count 2 of the Second Superseding

Indictment.  In Ground Nine of the § 2255 motion, Gowadia argues

that he should not have been convicted of Count 2 and therefore

could not have laundered the proceeds of the crime charged in

42

Count 2.  However, because Gowadia fails to demonstrate that he is entitled to § 2255 relief with respect to Count 2, Gowadia is unpersuasive in arguing that the money laundering count asserted in Count 19 necessarily fails.

## IV.      THE COURT DECLINES TO ISSUE A CERTIFICATE OF APPEALABILITY.

The court declines to grant Gowadia a certificate of appealability.  An appeal may not be taken to the court of appeals from a final order in a § 2255 proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B).  The court shall issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court denies a § 2255 petition on the merits, a petitioner, to satisfy the requirements of section 2253(c)(2), "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  When, however, a

> district court denies a habeas petition on
> procedural grounds without reaching the
> prisoner's underlying constitutional claim, a
> [certificate of appealability] should issue
> when the prisoner shows . . . that jurists of
> reason would find it debatable whether the
> petition states a valid claim of the denial

of a constitutional right and that jurists of
reason would find it debatable whether the
district court was correct in its procedural
ruling.

Id.

This court does not think any reasonable jurist would
find it debatable that Gowadia has procedurally defaulted on his
claims.  Nor does this court think any reasonable jurist would
find this court's assessment of the merits of Gowadia's remaining
constitutional claims debatable or wrong.  Accordingly, the court
declines to issue a certificate of appealability.

**V.        CONCLUSION.**

The court denies Gowadia's § 2255 motion and declines
to issue a certificate of appealability for the reasons set forth
above.  The Clerk of Court is directed to enter judgment in favor
of the Government and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 5, 2015.



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

United States of America v. Gowadia, Crim. No. 05-00486 SOM and Civ. No. 14-00481
SOM/KSC; ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON
IN FEDERAL CUSTODY UNDER 28 U.S.C. § 2255; ORDER DENYING CERTIFICATE OF APPEALABILITY